UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

    NOTUS LLC d/b/a ROFX, EASY COM LLC
d/b/a ROFX, GLOBAL E-ADVANTAGES
LLC a/k/a KICKMAGIC LLC d/b/a ROFX,
GROVEE, LLC d/b/a ROFX, SHOPOSTAR,
LLC d/b/a ROFX, JASE DAVIS, BORYS
KONOVALENKO, ANNA SHYMKO,
ALLA SKALA, and TIMOTHY STUBBS,

    Defendants.

_____/

Case No.: 1:22-cv-20291-DPG

## DEFENDANT TIMOTHY STUBBS' RESPONSE TO PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANT TIMOTHY STUBBS

Defendant Timothy Stubbs responds to Plaintiff Commodity Futures Trading Commission's ("CFTC") Motion for a Preliminary Injunction Against Defendant Timothy Stubbs [ECF No. 85] (the "Motion").

## I.   INTRODUCTION

It would be understandable if a person read the CFTC's Motion and failed to realize it sought an injunction against just Mr. Stubbs. In over 30 pages, the CFTC specifically discusses Mr. Stubbs and his supposed acts in just two paragraphs, one on page 18 and the other on page 28. The remaining 28 pages discuss the conduct of other Defendants.

This is no accident or omission. The CFTC has repeatedly tried to muddy the waters between its allegations against Mr. Stubbs and those regarding other Defendants. In fact, Plaintiff's initial Complaint was dismissed on shotgun pleading grounds because the CFTC acted similarly, failing to specify which Defendants it accused of engaging in what conduct. *See* Order [ECF No. 51] at 3.

Plaintiff avoids discussing Mr. Stubbs because it recognizes the lack of credible evidence to support its commodity fraud claims against him. Rather it lumps him together with other Defendants and strains to argue that the limited actions it attributes to Mr. Stubbs should somehow be viewed as sufficient to support its misguided claims against Mr. Stubbs.

Plaintiff accuses Mr. Stubbs of opening a bank account. *See* Motion at 18. Plaintiff also claims that because ROFX customer deposits were wired to this account and Mr. Stubbs received account statements, Mr. Stubbs "was on actual notice that ROFX customers were depositing funds in Grovee's BOA account for forex transactions and investments." *See id.* Plaintiff also accuses Mr. Stubbs of wiring "customer funds to Corporate Defendants and to offshore non-trading corporate entities." *Id.* at 19.

The problem with the CFTC's prima face case—or lack thereof—is that it relies upon faulty assumptions and lacks support. For starters, the CFTC puts forth no evidence—nor could it—indicating that Mr. Stubbs opened the Grovee account that the CFTC attributes to him with any knowledge or awareness of, or involvement in, the alleged ROFX conspiracy. Appearing to

recognize this, Plaintiff asserts that Mr. Stubbs could be responsible for joining the ROFX conspiracy after he supposedly gained actual knowledge of the ROFX scheme vis-à-vis the listed customer deposits. *See id.* at 18–19.

But the only evidence regarding what came *after* Mr. Stubbs received the statement is exculpatory and omitted by the CFTC. Mr. Stubbs had opened the Grovee account for Nataliya Los, who assisted him years earlier with the adoption of his two children from Ukraine and who Mr. Stubbs viewed, at the time, as a close and trusted friend. Affidavit of Timothy Stubbs (attached as Exhibit 1) ¶ 3–5, 9–14. When Mr. Stubbs saw the words "ROFX" listed in the Grovee bank statements, he asked Ms. Los, "What is ROFX?" Exhibit D to the Affidavit of Timothy Stubbs at 4.[1] When he first saw the term, he thought "ROFX" referred to foreign exchange trading. He had neither any idea that ROFX referred to any specific business or website nor any awareness of the actual enterprise alleged by the CFTC. Affidavit of Timothy Stubbs ¶ 16.

When Mr. Stubbs asked about the meaning of "ROFX," Ms. Los repeatedly lied, insisting that "[W]e do not recognize those payments, and they need to be returned as sent by mistake." *See* Exhibit D to the Affidavit of Timothy Stubbs at 4.

Ms. Los sent Mr. Stubbs purported invoices for colocation services, for which she asserted the depositors were paying Grovee. *See* Exhibit G to the Affidavit of Timothy Stubbs. The deposits mentioning "ROFX" were not included in the invoices she sent, which made sense to Mr. Stubbs at the time given that she claimed those deposits were "sent by mistake." *See id.* She also sent him invoices from a Thai company for services that she claimed the Thai company was providing to Grovee, and for which the Thai company demanded payment. Exhibit H to the Affidavit of Timothy Stubbs; Exhibit C to the Affidavit of Timothy Stubbs at 10; Affidavit of Timothy Stubbs ¶ 18.

Ultimately, no evidence exists that Mr. Stubbs ever joined any conspiracy, ever had any scienter regarding ROFX, was ever involved in any foreign exchange trading, or had any

---

[1] All references to page numbers of Exhibits of the Affidavit of Timothy Stubbs are references to pdf pages.

involvement whatsoever in running ROFX.com or deceiving investors. What the evidence does establish is that Mr. Stubbs assisted someone he trusted in opening a bank account, was repeatedly deceived regarding the purpose of the account, and closed the account roughly two months after opening it and only one month after it had any activity. Affidavit of Timothy Stubbs ¶ 12–19.

Given the evidence, Mr. Stubbs submits that this case should have been dropped months ago. The ROFX victims voluntarily dismissed all of their claims against Mr. Stubbs on October 4, 2022. *See* Plaintiff's Notice of Voluntary Dismissal, *Birmingham v. Doe*, 1:21-cv-23472-RNS (Filed Oct. 4, 2022). Indeed, given that the CFTC is aware of many of the above facts, it is beyond reason why it has not voluntarily dismissed this case rather than continuing to pursue an action in which they know Mr. Stubbs, like others, was a victim and not a perpetrator.

In sum, the Court should deny Plaintiff's Motion. Plaintiff fails to establish that Mr. Stubbs has violated the CEA Act or that there is any likelihood, let alone a reasonable one, that Mr. Stubbs will be committing future violations of the CEA Act. Plaintiff's affiliated requests for an asset freeze, full accounting of assets, and an order authorizing the inspection of his private property should also all be denied, as the evidence in this case overwhelmingly indicates these requests are unjustified, inappropriate, and entirely unnecessary considering Mr. Stubbs' full, meaningful, and substantial participation in ongoing discovery and the CFTC's lack of evidence indicating that Mr. Stubbs has been concealing or improperly disposing of any assets.

## II.    LEGAL STANDARD

Under the Commodities Exchange Act (CEA), to obtain injunctive relief, the CFTC must show that "(1) a prima facie violation of the Act has occurred or is occurring; and (2) that there is a 'reasonable likelihood' of future violations." *Commodity Futures Trading Comm'n v. Fingerhut*, Case No. 1:20-cv-21887, 2021 WL 65069, at *7 (S.D. Fla. Jan. 7, 2021) (Gayles, J.). In determining whether there is a reasonable likelihood of future violations, "[d]istrict courts in the Eleventh Circuit consider a number of factors . . . including 'the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the

wrongful nature of his conduct, and the likelihood defendant's occupation will present opportunities for future violations.'" *Id.* at *12 (quoting *U.S. Commodity Futures Trading Comm'n v. K.B. Concepts Grp.,* LLC, No. 16-CIV-24022, 2017 WL 3085088, at *4 (S.D. Fla. May 8, 2017)).

The Movant—here the CFTC—faces a heavy burden, as "[t]he grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it. . . . [O]n application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."" *SEC v. Blockvest, LLC*, No.: 18-CV-2287-GPB (BLM), 2019 WL 625163, at *4 (S.D. Cal. Feb. 14, 2019).[2]

## III.    FACTS

On November 18, 2020, Mr. Stubbs opened a bank account for a longtime friend, Nataliya Los, a Ukrainian national who had assisted Mr. Stubbs and his ex-wife with the adoption of their two children from Ukraine in 2012. *See* Affidavit of Timothy Stubbs ¶ 3–5. The boys—Elijah and Ruslan—were adopted in 2012 at ages 16 and 14, respectively. *Id.* They spoke no English, and Ms. Los' assistance proved invaluable in both facilitating the adoption and helping the kids transition to life in the United States. *Id.* ¶ 4. Mr. Stubbs' understanding was that Ms. Los was similar to an attorney in Ukraine, and was licensed to represent clients in courts of Ukraine in certain types of cases, including adoptions. *Id.* Ms. Los, and those she worked with, not only handled all of the Ukrainian paperwork for the adoption of Mr. Stubbs' children, but also hosted Mr. Stubbs and his wife when they were in Ukraine during the Court-approved adoption proceedings. *Id.* After Mr. Stubbs and his wife began divorce proceedings, Ms. Los also came to

---

[2] "Since the injunctive provisions of the Commodities Exchange Act are in all material respects similar to the injunctive provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), and the Securities Act of 1933, 15 U.S.C. § 77t(b), the case law developed under those sections of the securities laws is instructive for courts considering equitable relief cases under Section 13a–1 of the Commodities Exchange Act." *CFTC v. Hunter Wise Commodities,* No. 12–81311–CIV.LLC, 2013 WL 718503, at *9 n.33 (S.D. Fla. Feb. 26, 2013). Plaintiff does not appear to dispute this, as it repeatedly references preliminary injunction caselaw on the Securities Exchange Acts in support of its own Motion. *See, e.g.*, Motion at 12, 21, 27.

the United States with the expectation that she would testify during the related custody proceedings. *Id.* ¶ 5. She ultimately never testified during those proceedings. *Id.*

Around this time, Ms. Los approached Mr. Stubbs with an opportunity for his sons to earn spending money. *Id.* ¶ 6. Ms. Los said she had businesses that drop-shipped to the U.S. for white label fulfillment. *Id.* She told Mr. Stubbs that the teenagers could earn some income by receiving products, like IPhone cases, and packaging and shipping them with a prepaid shipping label for products sold via Amazon and EBay. *Id.* Mr. Stubbs had no reason to believe then or now there was anything suspect about this business, and he trusted Ms. Los. The companies that engaged in this drop shipping were Notus and Shopostar, two of the Corporate Defendants in this matter. *See id.* The CFTC has, to date, not alleged that anything improper occurred regarding this drop shipping. Mr. Stubbs' kids provided manual services for this drop-shipping involving Notus and Shopostar from sometime in 2013 to 2015 to around June of 2014, when Ms. Los arrived in the United States and before the CFTC alleges that either company became involved in the alleged ROFX conspiracy. *See id.*; First Amended Complaint ¶ 1 (defining relevant period for ROFX as January 2018 through September 2021).

During approximately June 2014 through December 2014, Ms. Los lived at Mr. Stubbs' parents' house in Brandon, Mississippi with Mr. Stubbs and his parents and sons. *See* Affidavit of Timothy Stubbs ¶ 7. It was at this time that Mr. Stubbs was going through his custody proceedings. *See id.* ¶¶ 5, 7. Ms. Los returned to the United States in January 2015, and lived with Mr. Stubbs and his sons at Mr. Stubbs' home in Brandon,  Mississippi. *See id.* ¶ 5. With Mr. Stubbs' permission, Ms. Los used his mailing address for a number of her companies, including Shopostar. *See id.* ¶ 7.

Over the years, Ms. Los would occasionally ask Mr. Stubbs for favors. These included her asking if she could use property he owned in the United States to receive  mail for herself and her friend, Borys Konovalenko, a Defendant in this matter. *Id.* ¶ 8. She told Mr. Stubbs that it was easier for her to use a United States address to receive important mail and packages due to the length of time mail could take to reach Ukraine. *Id.* Mr. Stubbs forwarded the packages and mail

arriving at his property to Ms. Los generally via DHL. *Id.* To forward mail, he scanned the mail received and emailed it. *Id.* Ms. Los paid Mr. Stubbs for his time and inconvenience. *Id.*

In late 2020, Ms. Los asked Mr. Stubbs if he would help her open a bank account for a company involved in the colocation services business, which she described as offshore data storage centers. *Id.* ¶ 10. This company was Grovee—now one of the corporate Defendants—and it had a functioning website at the time (Grovee.net), the content of which was consistent with the services she described as constituting Grovee's business. *Id.* She told him that Grovee sold data server space internationally and that it wanted to expand to the United States. *Id.* Mr. Stubbs was not involved in incorporating Grovee. *Id.* The CFTC does not appear to dispute this. Grovee was formed on October 14, 2020. *See* Affidavit of George Malas [ECF No. 85-2] at 66.

As the CFTC acknowledges, Mr. Stubbs opened an account for Grovee, ending in 9293 at Bank of America on November 18, 2020. *See* Affidavit of George Malas [ECF No. 85-1] at 30. Around 10:17 am that day, Mr. Stubbs asked Ms. Los for the information that he would need to provide to Bank of America in order for him to be able to open an account for her. *See* Exhibit B to Affidavit of Timothy Stubbs at 4. Specifically, he asked, "What is the business going to be selling or doing to make money?" *Id.* Ms. Los replied that the "Business will be involved in online marketing, ecommerce, software development, [and] colocation services." *Id.*

Before his appointment to open the account, Mr. Stubbs again asked Ms. Los to clarify what she meant by Grovee's business. *Id.* at 11. Ms. Los responded: "It is colocation, basically, the service to rent a server space and manage it. TO KEEP DOCUMEMTS [sic] THERE, PROGRAMMS [sic] AND WORKSTATIONS. That will be one of the services . . . Plus: it coulld [sic] be sales of clicks and banners, online sales to promote goods, SEO services to meke client's site searchable [sic] in web." *Id.* at 12 (emphasis in original). Mr. Stubbs had no reason to doubt Ms. Los' statements that the company would be involved in colocation services or other online or SEO sales or services—she had been a trusted friend of his and his children for almost a decade. Affidavit of Timothy Stubbs ¶¶ 3–5. Ms. Los appears to have repeatedly lied to him. For example, when he noticed a volume of money flowing into the Grovee account, he asked Ms. Los to explain

why the account was receiving deposits. *See* Exhibit D to the Affidavit of Timothy Stubbs at 5 ("I want a list of all incoming monies. Who they came from and for what."). She told him that the activity resulted from Grovee providing services to third parties and these deposits were payments for those services. She sent him what she represented to be Grovee invoices to third-parties for all but two of the incoming transactions immediately upon his inquiry that corresponded exactly with the amounts of those incoming in the Grovee bank account. *See id.* ("Yes, you will get it today. . . . If you open grovee.llc email, you will find all incoming [sic] and outgoing invoices in Drive, plus contract."); Exhibit G to the Affidavit of Timothy Stubbs (the invoices referenced); *see also* Affidavit of Timothy Stubbs ¶¶ 15–18. She also sent Mr. Stubbs the payment invoices due for outgoing transactions, which included invoices from a Thai company for services that she claimed the Thai company was providing to Grovee and for which she said the Thai company demanded payment. *Id.* ¶ 18; Exhibit H to the Affidavit of Timothy Stubbs. In addition, when Ms. Los asked Mr. Stubbs to wire money from the account to Boonruk Ruamkit Co. Ltd., Mr. Stubbs asked her for the purpose of the wire. *See* Exhibit C to the Affidavit of Timothy Stubbs at 10. She sent him the specs to the services that she told him were being purchased. *Id.*

Mr. Stubbs had no knowledge that Ms. Los was lying. On December 17 2020, when Mr. Stubbs noticed that the account had received a small number of deposits that included the words "ROFX," Mr. Stubbs had no idea from the account statements that ROFX actually referred to what the CFTC now claims it did—"Robot Forex Trading"—or that the "RO" in ROFX meant "Robot." *See* Affidavit of George Malas [ECF No. 85-1] at 12 (describing meaning of "RO" in "ROFX"); *see* Affidavit of Timothy Stubbs ¶ 16. He furthermore had no idea that Ms. Los had earlier lied to him repeatedly about the purpose of the account. *See id.*

Mr. Stubbs asked Ms. Los, "What is ROFX?" Exhibit D to the Affidavit of Timothy Stubbs at 4. She told him the deposits were "a mistake." *Id.* Mr. Stubbs questioned Ms. Los about her explanation. *See id.* When Mr. Stubbs stated that "I know what this is and I don't like it," he believed ROFX might refer to foreign exchange trading given that ROFX included "FX," a common and widely-known acronym for foreign exchange. Affidavit of Timothy Stubbs ¶ 16.

Again, Mr. Stubbs had no knowledge of ROFX at this or any other time. *Id.* Mr. Stubbs had never been told the account would be used for foreign exchange trading or anything other than Grovee's alleged colocation services. *Id.* ¶¶ 12, 15–16. He understood, as the chats state, that his "ass will be the one in trouble if something is wrong here." Exhibit D to the Affidavit of Timothy Stubbs at 5. He was also growing frustrated with the amount of activity on the account given that Ms. Los had advised him the account would have little activity until control of the account was transferred to the owners of the underlying business. Affidavit of Timothy Stubbs ¶ 12, 19. Ms. Los, however, insisted that certain deposits were erroneous and that the people who sent them had "already contacted us for returns." Exhibit D to the Affidavit of Timothy Stubbs at 5. She insisted that Grovee was aboveboard and that nothing improper was taking place. *See id.* As discussed above, she also provided invoices for all of the other deposits into the account. *See id.*; Exhibit G to the Affidavit of Timothy Stubbs.

Mr. Stubbs eventually became uncomfortable with being the account signatory given that the amount of activity on the account was inconsistent with what Ms. Los had told him would occur before he created the account. Affidavit of Timothy Stubbs ¶ 19. Mr. Stubbs told Ms. Los around December of 2020 that he did not want anything further to do with Grovee LLC. *Id.* He closed the account on January 20, 2021. *Id.*[3]

## IV.   ARGUMENT

The Motion should be denied because Plaintiff has failed to establish its causes of action against Mr. Stubbs or that there is any likelihood—let alone a reasonable one—that Mr. Stubbs will be committing future violations of the CEA Act. The associated requests for the Court to freeze Mr. Stubbs assets and allow the CFTC to essentially commandeer Mr. Stubbs' assets, and his property for government inspections, are both grossly inappropriate considering both the lack

---

[3] The CFTC notes that Tedi McClendon, a third party, opened another account for Grovee on February 6, 2021 (Account No. 5659). *See* ECF No. 85-2 at 111. The document describes Grovee as a single member LLC. Ms. McClendon listed herself as the sole member of that LLC. Although it indeed appears that Ms. McClendon used Mr. Stubbs' address, Mr. Stubbs has no idea why she did that. Affidavit of Timothy Stubbs ¶ 20. He furthermore has no recollection of having ever received or reviewed any statements for the account opened by Tedi McClendon. *Id.*

of supporting evidence and Mr. Stubbs' ongoing and extensive participation in discovery.

### A. The CFTC Has Failed to Show that A Prima Facie Violation of the CEA Act Has Occurred Or Is Occurring With Respect to Any of Its Counts Against Mr. Stubbs.

#### i. The CFTC Has Failed to Show the Violation Alleged In Count I of Its Amended Complaint.

In Count I, the CFTC alleges "fraud in connection with Forex." *See* First Amended Complaint ¶¶ 102–105. Specifically, Plaintiff claims that Mr. Stubbs violated 7 U.S.C. § 6b(a)(2)(A) and (C) and 17 C.F.R. § 5.2(b)(1), (3).

To prove its claim under Count I, the CFTC must prove the elements of a common law fraud claim, except that it need not show either reliance or damages. *See CFTC v. R.J. Fitzgerald & Co., Inc.,* 310 F.3d 1321, 1328 (11th Cir. 2002). The elements are "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *Id.* "Failure to establish any one of these elements is dispositive and would preclude CFTC's fraud/deception claims." *Id.*

Quite simply, the CFTC has shown nothing. Plaintiff has submitted no evidence indicating that Mr. Stubbs ever made any misrepresentation, misleading statement, or any deceptive omission. The CFTC's failure to provide any evidence that Mr. Stubbs ever spoke with any alleged customer of ROFX, ever spoke with any co-Defendant about ROFX or the alleged conspiracy, or knew of, or had any involvement with, the website that the CFTC contends was at the center of the fraud speaks volumes.[4]

---

[4] Plaintiff will be filing a motion shortly to strike the Declaration of George Malas, an investigator at the CFTC. Mr. Malas' Declaration is improper, suffused with, among other things, conclusory statements of fact upon which he has no personal knowledge and heresay statements, and violates the Federal Rules of Evidence. Mr. Stubbs, however, has no objection to the separate admissibility of exhibits 4 and 11 (which appear to pertain to Mr. Stubbs) given that they begin with declarations from records custodians for the organizations to whom those records belong. Mr. Stubbs would also have no objection to the admissibility of those Grovee bank statements for account ending in 9293 that are contained in exhibit 20 if the CFTC submits evidence establishing that the Bank of America Records Custodian Declaration in exhibit 11 pertains to, and establishes the admissibility of, those Bank of America records in exhibit 20 for account 9293. Solely for the purpose of this

The only evidence Plaintiff provides is that Mr. Stubbs opened a bank account for Grovee and that alleged ROFX customers made deposits into that account. The CFTC has submitted nothing indicating that Mr. Stubbs ever had any communications with any ROFX customer—*or even with any co-Defendant on ROFX*. There is not a single piece of evidence in this matter that even remotely suggests that Mr. Stubbs 1) made misrepresentations and/or omissions in any statement or email to any investor; 2) participated in any conduct to mislead investors about ROFX; 3) had any involvement with establishing or maintaining the ROFX website; or 4) engaged in any conduct to solicit funds from any investor. Moreover, it is also impossible for the CFTC to predicate this claim on any deceptive omission given that the evidence establishes that Mr. Stubbs knew nothing of ROFX and never gained knowledge of it. Obviously, a defendant cannot decide to omit knowledge of which he is unaware. Further, the CFTC submits no evidence that ROFX customers were instructed by ROFX to send any monies to Grovee.

The CFTC also submits evidence indicating that a third-party, Tedi McClendon, opened another bank account for Grovee and listed herself as a signatory for that account.[5] The CFTC claims that Ms. McClendon put down Mr. Stubbs' address as her address when opening the account. *See* ECF No. 85-2 at 111. Mr. Stubbs has no knowledge about why Ms. McClendon did this. Affidavit of Timothy Stubbs ¶ 20. He never authorized her to do this. *Id.* He was not involved whatsoever in opening that account. *Id.* Moreover, he has no recollection of ever receiving or

---

response, Mr. Stubbs assumes that all exhibits attached to the Declaration are admissible as evidence.

[5] Curiously, the CFTC does not contend that Tedi McLendon, who the CFTC describes as "T.M.," was part of the ROFX fraud despite arguing that she was listed as the signatory on the latter, second Grovee account ending in 5659 and that Mr. Stubbs' listing as a signatory on the first Grovee account made him a "controlling person" of Grovee and possessive of "actual knowledge" of what "ROFX" meant on Grovee account statements. Although the CFTC claims that approximately $153,165.10 flowed through the Grovee account on which Mr. Stubbs was listed on paperwork as a signatory, the CFTC asserts that almost ten times as much ($1,117,415.79) flowed through the Grovee account on which Ms. McLendon was a signatory.

reviewing any statements for that account. *Id.*[6] He did, however, receive a debit card in the mail associated with the account that Tedi McClendon opened. Upon receiving it, he complained to Ms. Los about the use of his address. *Id.*

The CFTC acknowledges that it lacks any evidence establishing that Mr. Stubbs made any representations or omissions to ROFX customers. In his First Request for Admissions, Mr. Stubbs asked the CFTC to "Admit that Mr. Stubbs never made any representations to any customers or investors of ROFX." *See* Exhibit K to Affidavit of Timothy Stubbs at 4. Mr. Stubbs also asked the CFTC to "Admit that Mr. Stubbs had no communications with any customers or investors of ROFX." *Id.* On both questions, the CFTC responded that it "has made reasonable inquiry and has insufficient information to admit or deny this request at this time." *Id.* at 4–5. The CFTC served Mr. Stubbs with its response on January 18, 2023, one week after filing its Motion. *See id.*[7]

Plaintiff has also provided nothing establishing the second required element—that Mr. Stubbs ever had any scienter. Scienter is established if a defendant intended to defraud, manipulate, or deceive, or if a defendant's conduct represents an extreme departure from the standards of ordinary care. *Fitzgerald*, 310 F.3d at 1328. "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable

---

[6] In any event, the CFTC is also incredibly vague about why Ms. McClendon's choices and the second Grovee account matters to the CFTC's claims against Mr. Stubbs. The CFTC argues that being a signatory on the first Grovee account is what establishes Mr. Stubbs' status as a controlling person (more on that issue below) and his "actual awareness" of what ROFX purportedly meant. *See* Motion at 18. The CFTC's arguments, however, are not only contradicted by the law and record evidence, but also inconsistent with any vague attempt to impose liability on Mr. Stubbs for Ms. McClendon's decision to name herself as the sole signatory on the second Grovee account. If the CFTC is implying that merely having someone else list a person's address on a bank account—without that person's knowledge—makes one a controlling person, the agency provides no law in support of that argument and Mr. Stubbs has found none. Moreover, the CFTC provides no evidence that Mr. Stubbs had any involvement in the second Grovee account except to the extent that Ms. McClendon apparently used Mr. Stubbs' address without his permission. Accordingly, the CFTC fails to make any showings about Mr. Stubbs engaging in misrepresentations, omissions, or other activity with regard to the second account.

[7] Mr. Stubbs' counsel and the CFTC have held a meet and confer conference regarding the CFTC's discovery responses. The CFTC indicates that it may be amending some of its answers.

negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted).[8]

To support its scienter argument, the CFTC attaches the only evidence it presents regarding Mr. Stubbs—a Grovee account statement—and argues that because 2 deposits in the statement included the word "ROFX," Mr. Stubbs "was on actual notice that ROFX customers were depositing funds in Grovee's BOA account for forex transactions and investments." *See* Motion at 18. But this is preposterous—how would an ordinary person know (1) that the letters "RO" meant Robot; (2) that Nataliya Los was lying when she repeatedly assured Mr. Stubbs that certain deposits were accidental and immediately provided invoices matching other deposits consistent with her representations of valid business operations; or (3) that any foreign exchange trading occurring was either fraudulent or the result of the actual scheme that the CFTC's alleges? Ultimately, the CFTC has provided *nothing* indicating that Mr. Stubbs had any notice of the ROFX fraud, while Mr. Stubbs has provided evidence in the form of an affidavit of facts of which he has personal knowledge and contemporaneous documents that he respectfully submits establish unequivocally that the CFTC's assertions lack any merit.

The CFTC also appears to claim that Mr. Stubbs had scienter because he allegedly identified himself on the Bank of America account opening documents as a manager of Grovee and was the signatory on the account. Correspondence and the actual events, however, indicate that this was a paper formality associated with opening the Bank of America Account. Mr. Stubbs was not involved in incorporating Grovee, and his private correspondence with Ms. Los establishes that, in reality, Ms. Los, or others whom Mr. Stubbs is not aware of, had control over Grovee. Affidavit of Timothy Stubbs ¶ 9–19; *see also* Exhibits A–E to the Affidavit of Timothy Stubbs.

---

[8] The CFTC makes no allegations in its Amended Complaint that Mr. Stubbs acted with severe recklessness. It also never advances this argument in the Motion. Instead, the CFTC, without any evidence, asserts that Mr. Stubbs had actual notice of the ROFX conspiracy. *See* Motion at 18.

Now, only with the benefit of hindsight and knowledge of what the CFTC claims to have occurred, it appears that Ms. Los (1) formed Grovee or had it formed at her direction; (2) decided its business plans either herself or at the direction of others; (3) lied to Mr. Stubbs about Grovee's purpose and operations; (4) had knowledge and awareness of Grovee's operations or lack thereof, and the deposits being placed into the account; (5) instructed Mr. Stubbs on where to make transfers; and (6) advised Mr. Stubbs on what the transfers were purportedly for, including by falsely telling him that Boonruk Ruamkit required payment for invoices related to Boonruk Ruamkit's provision of goods and services. *See* Affidavit of Timothy Stubbs ¶ 9–20; *see also* Exhibits A–G to the Affidavit of Timothy Stubbs.

The correspondence establishes that (1) Mr. Stubbs did not form Grovee; (2) that he assisted Ms Los, at her request, with opening the Bank of America account; (3) that Mr. Stubbs did not operate Grovee; (4) that Mr. Stubbs had no involvement or awareness of Grovee's actual business, which was being managed by Ms. Los or others; and (5) that Mr. Stubbs never instigated any withdrawals out of the account, and solely authorized them after being instructed to do so by Ms. Los, inquiring into their purpose, and receiving information that ostensibly justified the transfers. Exhibits A–G to the Affidavit of Timothy Stubbs.

The evidence before the Court establishes that Mr. Stubbs had no scienter. When Mr. Stubbs saw the letters "ROFX," he asked Ms. Los, in their private chat correspondence, to what "ROFX" referred. Exhibit D to the Affidavit of Timothy Stubbs at 4. **This is evidence that he did not know what ROFX meant**. Moreover, Ms. Los' answer gave him no indication of what ROFX actually meant. *See id.* at 4–5. Even taking the CFTC's description of the ROFX scheme as true would mean that she lied and that Mr. Stubbs never received an honest answer or gained awareness of the alleged ROFX scheme.

The CFTC's responses to Mr. Stubbs' discovery also establish that the CFTC lacks evidence to establish scienter. In his First Request for Admissions, Mr. Stubbs asked the CFTC to:

(1) "Admit that Mr. Stubbs had no knowledge at any time before September 2021 that Grovee, LLC would be used or was being used to facilitate the scheme alleged

13

in paragraphs 1 and 2 of the CFTC's First Amended Complaint;" (2) "Admit that Mr. Stubbs had no involvement or participation in the creation or operation of www.ROFX.net;" (3) "Admit that Mr. Stubbs never solicited or accepted orders for any foreign exchange transaction, agreement, or contract."

*See* Exhibit K at 5–6.

On all questions, the CFTC responded that it "has made reasonable inquiry and has insufficient information to admit or deny this request at this time." *Id.* at 4–5.[9]

Finally, the CFTC fails to prove the final element of materiality. "[A] representation or omission is 'material' if a reasonable investor would consider it important in deciding whether to make an investment." *See Fitzgerald*, 310 F.3d at 1328–29. Given that the CFTC does not and cannot provide evidence that Mr. Stubbs[10] ever had any communications with any ROFX investors, or made any misrepresentation, misleading statement, or deceptive omissions in any such communications, the CFTC has failed to show that any of those (nonexistent) statements were material.

### ii.   The CFTC Has Failed to Show the Violation Alleged in Count II of Its Amended Complaint.

In Count II, the CFTC alleges that Mr. Stubbs violated 7 U.S.C. § 9(1) and 17 C.F.R. §180.1(A). To plead liability under subsections (1) and (3) of Rule 180.1(a), the CFTC must allege that Mr. Stubbs (1) committed a manipulative or deceptive act, (2) in furtherance of the alleged scheme, and (3) with scienter. *CFTC v. Gorman*, No. 21 Civ. 870 (VM), 2022 WL 596261, at * 10 (S.D.N.Y. Feb. 28, 2022). To establish a misstatement or omission claim under Rule 180.1(a)(2), the CFTC must allege Mr. Stubbs (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of forex. *Id.* at *14 (internal quotations omitted).

The deficiencies of the CFTC's evidence on Count II are as glaring as they are for Count I. In its Motion, Plaintiff says nothing about what exactly Mr. Stubbs did that constituted a

---

[9] The CFTC, during a meet and confer call on their discovery responses, indicated that it may be amending some of its answers.

[10] Nor does it provide evidence of any other persons having such communications.

manipulative or deceptive act. It's also unclear what he could have done that would satisfy that element given that he had no contact with any of the alleged ROFX victims, nor the website the CFTC alleges was at the epicenter of the fraud. And, given that the evidence establishes that he never knew of any "alleged scheme," he could not have committed any act in furtherance of it. *See* Affidavit of Timothy Stubbs ¶¶ 9–20; Exhibit D to the Affidavit of Timothy Stubbs at 4–5. Finally, even assuming *arguendo* that he did commit a manipulative or deceptive act in furtherance of a scheme he knew nothing about, he never did so with scienter given that he had no awareness of ROFX or the alleged conspiracy. *See id.*; Affidavit of Timothy Stubbs ¶¶ 9–20.

### iii. The CFTC Has Failed to Show the Violation Alleged in Count III of Its Amended Complaint.

The CFTC has also failed to prove that it has a substantial likelihood of prevailing against Mr. Stubbs on Count III of Its Amended Complaint. Count III accuses Mr. Stubbs of violating 7 U.S.C. § 6d(a)(1), which makes it is unlawful for any person to be a Futures Commission Merchant (FCM) unless that person is so registered with the CFTC. See First Amended Complaint [ECF No. 55] ¶¶ 141, 146, 152. Count III asserts that Grovee acted as a FCM and attempts to hold Mr. Stubbs liable for Grovee's purported violation under a theory of controlling person liability. *See id.*; *see also* Motion at 25–27.

The CFTC's lack of evidence and the affirmative evidence submitted to the Court together make Count III fail. First, Plaintiff would need to prove that specifically Grovee acted as an FCM.[11]

---

[11] 7 U.S.C. § 1a(28) defines a Futures Commission Merchant as "an individual, association, partnership, corporation, or trust" that is "(aa) engaged in soliciting or in accepting orders for (AA) the purchase or sale of a commodity for future delivery; (BB) a security futures product; (CC) a swap; (DD) any agreement, contract, or transaction described in section 2(c)(2)(C)(i) of this title or section 2(c)(2)(D)(i) of this title; (EE) any commodity option authorized under section 6c of this title; or (FF) any leverage transaction authorized under section 23 of this title; or (bb) acting as a counterparty in any agreement, contract, or transaction described in section 2(c)(2)(C)(i) of this title or section 2(c)(2)(D)(i) of this title; and (II) in or in connection with the activities described in items (aa) or (bb) of subclause (I), accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom; or (ii) that is registered with the Commission as a futures commission merchant."

The CFTC failed to do so. The CFTC only submits evidence indicating that Grovee received deposits from the alleged ROFX customers. *See* ECF No. 83-5 at 116–18. Nothing, however, indicates that Grovee both "engaged in *soliciting or accepting orders*" for any of the statutorily-enumerated futures products and "accept[ed] any money . . . to *margin, guarantee, or secure* any trades or contracts . . . ." *See id.* (emphasis added).

Mr. Stubbs has no knowledge of Grovee's business operations, as he had no involvment in running or operating the company. Affidavit of Timothy Stubbs ¶ 12. He has no knowledge of whether Grovee or Ms. Los were actually "engaged in soliciting or accepting orders" and accepted any deposited money "to margin, guarantee, or secure any trades or contracts." *See id.*; *see also* Exhibit K at 7 (in response to Mr. Stubbs' Request for Admission asking CFTC to "Admit that Mr. Stubbs had no knowledge that Jase Davis, Borys Konovalenko, Anna Shymko, Alla Skala, or Natalia Los was involved in any activity involving the actual or purported trading of foreign exchange," stating that CFTC "has made reasonable inquiry and has insufficient information to admit or deny this request at this time.").[12] His point here is merely that the CFTC has the burden of proof to establish that Grovee acted as an FCM, and has clearly failed to meet that burden.

Second, the CFTC would need to prove that it may impose controlling person liability on Mr. Stubbs. This requires showing that Mr. Stubbs "as a controlling person, did not act in good faith or knowingly induced, directly or indirectly, the conduct which constitutes a violation of the Act." *Fitzgerald*, 310 F.3d at 1334. "To satisfy the latter standard, CFTC must show that the controlling person had actual or constructive knowledge of the core activities that make up the violation at issue and allowed them to continue." *Id.*

To prove that Mr. Stubbs was a controlling person in the first place, the CFTC must show that a primary violation was committed and that the defendant "directly or indirectly" controlled the violator. *CFTC v. Monex Credit Co.*, No. 8:17-cv-01868-JVS-DFMx, 2021 WL 6102524 (C.D.

---

[12] Mr. Stubbs' counsel and the CFTC have held a meet and confer conference regarding the CFTC's discovery responses. The CFTC may be amending some of its answers.

Cal. Oct. 28, 2021). "To establish that a defendant controlled a [business] for purposes of § 13c(b), [CFTC] must show that the defendant 'actually exercised general control over the operation of the entity principally liable' *and* 'possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised." *CFTC v. Allied Mkts, LLC*, 371 F. Supp. 3d 1035, 1052 (N.D. Fla. 2019) (emphasis added).

Here, the CFTC neither proves that Mr. Stubbs was a controlling person nor that he had the requisite actual or constructive knowledge sufficient to impose controlling person liability. The CFTC appears to acknowledge that Mr. Stubbs would have needed both general control over Grovee's operations and specific control over the transactions in question in order to be a controlling person. *See* Motion at 26. In support of its claim that Mr. Stubbs was a controlling person of Grovee because he was the signatory on the account, the CFTC cites to *In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *8 (Jan. 12, 1988), stating that it stands for the proposition that "evidence that a defendant is the sole principal, stockholder, member of the board of directors or the authorized signatory on the company's bank accounts indicates the power to control a company." *See* Motion at 26 (emphasis added). But *In re Spiegel*'s analysis of whether the defendant was a controlling person over a corporate entity was *holistic*—the Board of the CFTC never held that being an "authorized signatory on the company's bank accounts" was itself determinative and anything more than a factor for consideration. *Id.* Rather, that was one consideration among many that the Board considered when deciding whether the Administrative Law Judge correctly found that defendant exercised sufficient control to constitute a controlling person:

> Reviewing the judge's conclusions in light of this standard, we are satisfied his liability determinations concerning Counts I and III are supported by the record. The ALJ found that Spiegel controlled Gabriel throughout the time relevant to the Complaint. He relied on evidence that Spiegel was the founder and only principal of Gabriel and the firm's president, sole stockholder and sole member of the board of directors. Spiegel was the sole authorized signatory for Gabriel's corporate operating account and customer segregated funds account. He was the only person who signed checks for Gabriel, and had ultimate authority to hire and fire personnel. The ALJ found that Spiegel supervised and directed the preparation of Gabriel's

17

> segregation report and that any questions on the report were referred to him. Spiegel signed 1-FR Forms submitted by Gabriel and prepared on Spiegel's general instructions. Based on these factors, the ALJ found that "Spiegel was the single controlling person" of Gabriel and that Spiegel's "control was complete."

*Id.* at *8. Accordingly, that case does not stand for the proposition that being listed as an authorized signatory on a bank account is sufficient to demonstrate sufficient control to establish controlling person liability.[13] Further, the combination of facts upon which the court relied in that case are almost completely absent in this case as it relates to Mr. Stubbs. Rather, the CFTC would need to show that a primary violation was committed[14] and that the defendant "directly or indirectly" controlled the violator. *CFTC v. Monex Credit Co.*, No. 8:17-cv-01868-JVS-DFMx, 2021 WL 6102523 (C.D. Cal. Oct. 28, 2021).

In fact, Mr. Stubbs has found no caselaw in which a Court found that being listed on a bank account alone established that a defendant "actually exercised general control over the operation of the entity principally liable," and the CFTC has offered none. *See also CFTC v. Baragosh*, 278 F.3d 319, 330–31 (4th Cir. 2002) (noting that "[w]hether a defendant had such control *depends on all the facts and circumstances*," and reversing district court's grant of summary judgment to CFTC on controlling person question, where evidence established that defendant was

---

[13] Mr. Stubbs acknowledges that this Court wrote in *Commodity Futures Trading Comm'n v. Fingerhut*, Case No. 1:20-cv-21887, 2021 WL 65069, at *7 (S.D. Fla. Jan. 7, 2021) (Gayles, J.) that "[b]eing an officer, founder, principal, or authorized signatory on a company's bank account shows power to control a company." It is not clear, however, whether the Court meant that control of a bank account was sufficient in itself, even despite contrary evidence on the defendant's lack of control, or whether it was a factor that Courts considered in determining whether a defendant exercised general control over a corporate entity. It appears to have been the latter for two reasons. First, the Court cited to *In re Spiegel*, 1988 WL 232212, at *8 for the proposition, and *In re Spiegel* never treated being a signatory on a bank account as dispositive. *Fingerhut*, 2021 WL 65069, at *11. In addition, this Court's own analysis of control in *Fingerhut* was holistic—the Court discussed the defendant's ownership of the company, their status as corporate principals, and the degree of their control over operations, including their direct and knowing participation in the illegal scheme, including their own provision of fraudulent sales videos. *See id.*

[14] Mr. Stubbs had no knowledge of, or involvement in, Grovee's operations and his legal counsel do not represent Grovee. *See* Affidavit of Timothy Stubbs ¶ 12. Mr. Stubbs takes no position here on whether Grovee has committed any violations of the CEA Act. He merely disputes whether Plaintiff has proven that Mr. Stubbs may be held vicariously liable for that company's conduct.

"indisputably a signatory on several . . . bank accounts[.]" (emphasis added)); *CFTC v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976) ("While there is no statutory definition of 'control,' its concept is not a narrow one. Its determination is a question of fact which depends upon *the totality of the circumstances* including an appraisal of the influence upon management and policies of a corporation by the person involved." (emphasis added)); *cf. JCC, Inc. v. CFTC*, 63 F.3d 1557, 1569 (11th Cir. 1995) (criticizing defendant's "seriatim approach" to constructive knowledge issue as "ultimately unavailing" because "it is the body of evidence as a whole which must be considered here.").

In any event, the kind of holistic, multi-factorial controlling person analysis in the *Spiegel* case—and in *Fingerhut*, *Baragosh*, *Corr*, and every other case found by Mr. Stubbs— overwhelmingly indicates that Mr. Stubbs lacked control over Grovee's operations. Here, unlike in *Spiegel*, Stubbs was neither a founder nor a principal of Grovee. He was not a president, stockholder, officer of the company or a director on a board. He never signed any checks for Grovee and never possessed any authority to hire or fire anyone. He also never supervised, directed, or was even involved in anything regarding any business operations related to the company. And, unlike in *Fingerhut*, Mr. Stubbs was neither an owner nor a principal of Grovee and exercised no control over Grovee's business operations. In short, Mr. Stubbs was far from a controlling person.

And even if he was, respectfully it would *still* make no legal difference. Controlling person liability may only be imposed if the controlling person "did not act in good faith or knowingly induced, directly or indirectly, the conduct which constitutes a violation of the Act." *Fitzgerald*, 310 F.3d at 1334.

The CFTC never argues that Mr. Stubbs did not act in good faith.[15] The Motion only incorrectly asserts that Mr. Stubbs "knowingly induced the violations because [he] had actual or

---

[15] The CFTC does make a brief aside about a lack of good faith for "Facilitating Defendants," but that passage improperly obscures its evidence regarding Mr. Stubbs with that against other Defendants and fails to discuss any evidence against Mr. Stubbs. *See* Motion at 26–27.

constructive knowledge of the wrongdoing. *See* Motion at 26–27 (also improperly obscuring evidence regarding Mr. Stubbs with that against other Defendants). In any event, the CFTC offers no evidence establishing that Mr. Stubbs did not act in good faith, and the evidence before the Court establishes that Mr. Stubbs acted in good faith. "'A controlling person acts in bad faith if he 'did not maintain a reasonably adequate system of internal supervision and control over the [employee] or did not enforce with any reasonable diligence such system.' The controlling person must also act recklessly; negligence alone is insufficient." *Monieson v. CFTC*, 996 F.2d 852, 860 (7th Cir. 1993) (quoting *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992)) (citations omitted). Even if Mr. Stubbs was a controlling person—which he was not—the evidence indicates that Mr. Stubbs did not act "recklessly" in failing to maintain a reasonably adequate system of internal supervision. He repeatedly questioned Ms. Los when he noticed deposits mentioning the phrase "ROFX." Exhibit D to the Affidavit of Timothy Stubbs at 4–5. He furthermore repeatedly demanded to know the business in which Grovee was engaged. *See* Exhibit B to Affidavit of Timothy Stubbs at 4, 11–12. He was misled in response to those inquiries. *See id.* The CFTC has moreover (1) never claimed that Mr. Stubbs is to blame for Ms. Los' or others efforts to deceive him or ROFX customers, and (2) acknowledged that it has no evidence that Mr. Stubbs had "knowledge at any time before September 2021 that Grovee, LLC would be used or was being used to facilitate the scheme alleged in paragraphs 1 and 2 of the CFTC's First Amended Complaint." *See* Exhibit K to the Affidavit of Timothy Stubbs at 5. Of course, it has no such information after that date because Mr. Stubbs never came to learn of improper activities other than what has now been alleged in this case and that filed in the *Birmingham* matter, from which Plaintiffs dismissed Mr. Stubbs.

As noted above, the CFTC only asserts that knowing merely that deposits stating "ROFX" were in the account is sufficient to satisfy the "actual or constructive" knowledge standard. *See* Motion at 18, 26–27. The CFTC quotes *In re Spiegel* as stating: "'[W]e reject the view that a controlling person must know that the acts at issue amount to a violation in order to be held to have 'knowingly' induced the acts constituting the violation. . . . [I]f the controlling person

knowingly induces acts that amount to a violation, he will not escape liability merely because he acted in good faith." *Id.* at 27. This quotation, however, comes from a passage in which the Board explained that an ignorance of the law defense did not bar controlling person liability under the CEA Act. *See In re Spiegel*, 1988 WL 232212, at * 6–7. The Board explained that what matters for knowledge is not whether a defendant knew at the time that the facts giving rise to liability would eventually give rise to liability (*i.e.*, that they violated the law), but whether the defendant knew of those facts. *See id.* (quoting a U.S. Court of Appeals for the Tenth Circuit decision explaining that because a defendant "knew all the facts necessary for liability . . . we agree with the district court that he was liable as a controlling person for the nonregistration of securities herein.").

In re Spiegel* does not stand for the proposition that a defendant that is unaware of the facts giving rise to liability can have "actual or constructive knowledge." *In re Spiegel* is very clear about this, specifically noting that a defendant would need knowledge that the activities in question *were wrongful. See In re Spiegel*, 1988 WL 232212, at * 7 ("We also hold that mere consciousness of acts that eventually lead to violations is insufficient to establish that the controlling person knowingly induced the acts constituting the violation. Such an expansive reading is inconsistent with Congress' intent that the Division have the burden of showing some 'wrongdoing.'"); *see also id.* (offering, as an example of correct controlling person liability, "a person who has knowledge that a subordinate is making *false* representations to the public and does nothing to stop him . . . ." (emphasis added)).

In sum, the CFTC has failed to show that Mr. Stubbs either did not act in good faith or knowingly induced, directly or indirectly, the conduct which constitutes a violation of the Act. In fact, the evidence establishes that Mr. Stubbs had no knowledge—neither actual nor constructive—of the ROFX fraud or Grovee's alleged involvement. Affidavit of Timothy Stubbs ¶ 9–20; *see also* Exhibits A–G to the Affidavit of Timothy Stubbs. He furthermore had no knowledge that Grovee's receipt of the deposits or their withdrawal was wrongful or made in facilitation of the alleged scheme. Affidavit of Timothy Stubbs ¶ 15. The CFTC's position here

would not only make individuals with threadbare and tenuous ties to corporations potentially liable as controlling persons, but also would make such individuals liable regardless of whether they had any knowledge of corporate wrongdoing. The Court should reject the CFTC's attempt to massively expand the scope of controlling person liability, which would dramatically reconfigure important law.

### iv. The CFTC Has Failed to Show that It Will Be Able to Hold Mr. Stubbs Liable Here for the Actions of Others.

Plaintiff attempts to circumvent its apparent lack of evidence on Mr. Stubbs by asserting that it can hold Mr. Stubbs vicariously liable for the other Defendants' conduct because all Defendants together acted "operated and functioned as a common enterprise." Motion at 23.

How curious it is, then, that the CFTC has submitted **no evidence whatsoever that Mr. Stubbs ever had any communications with any Defendant regarding ROFX or the alleged ROFX conspiracy.**[16] Mr. Stubbs has already produced any communications with any of the Defendants as part of the over 8,527 documents he provided to Plaintiff in response to Plaintiff's first request for production.

Mr. Stubbs takes no position on whether a common enterprise existed with respect to other Defendants, either corporate or individual. But "[i]ndividuals [like Mr Stubbs] can only be part of a common enterprise when they act as a single economic unit with the other parties to the enterprise," *CFTC v. Wall Street Underground, Inc.*, 281 F. Supp. 2d 1260, 1271 (D. Kan. 2003). It is simply disingenuous, at best, for the CFTC to claim that Mr. Stubbs was part of any "a single economic unit with the other parties to the enterprise" when the evidence establishes (1) that he was not aware of the alleged common enterprise (*i.e.*, the alleged ROFX scheme and the supposed common enterprise's alleged business operations); (2) that he did not participate in deceiving, or even communicating with, any ROFX investors; (3) that he had no role in planning the ROFX scheme; (4) that he never even knew what ROFX actually was at any time; and, perhaps most

---

[16] Although Mr. Stubbs questioned Ms. Los about deposits mentioning ROFX, that conversation is exculpatory. She is also not currently a Defendant, as the CFTC has not yet sued her.

importantly, (5) that he had any communications with anyone in this alleged "common enterprise" regarding ROFX. Affidavit of Timothy Stubbs ¶ 9–20; *see also* Exhibits A–G to the Affidavit of Timothy Stubbs.

The CFTC also acknowledges that it lacks any evidence to the contrary, repeatedly answering requests for admissions pertaining to Mr. Stubbs' lack of involvement in ROFX with a statement that despite the CFTC's "reasonable inquiry," it has "insufficient information to admit or deny" any of those requests. *See* Exhibit K at 4–6. The CFTC has also admitted in the response to Mr. Stubbs' requests for production that it lacks any "documents or communications that refer to, relate to, or evidence that Mr. Stubbs, during the Relevant Period, had any involvement or participation in the creation or operation of www.ROFX.com or any knowledge of www.ROFX.com's creation, operation, or existence." *See* Exhibit L at 10–11.[17]

### B.   The CFTC Has Failed to Show that There Is a Reasonable Likelihood that Mr. Stubbs Will Violate the CEA Act in the Future.

To prove entitlement to a preliminary injunction, the CFTC must also satisfy the second requirement of showing that there is a 'reasonable likelihood' of future violations." *Fingerhut*, 2021 WL 65069, at *7. Factors commonly considered by district courts in the Eleventh Circuit include: "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood defendant's occupation will present opportunities for future violations." *Id.* at *12 (quoting *K.B. Concepts Grp.,* LLC, 2017 WL 3085088, at *4).

Overall, there is no likelihood, let alone a reasonable one, that Mr. Stubbs will be committing future violations of the CEA. First, his actions were not egregious and there were no infractions. As discussed above, the CFTC has not even shown that Mr. Stubbs violated the CEA. Even assuming that he violated the CEA—which he did not—his conduct was certainly isolated

---

[17] Mr. Stubbs' counsel and the CFTC have held a meet and confer conference regarding the CFTC's discovery responses. The CFTC indicated that it may be amending some of its answers.

and inconsistent with someone reasonably likely to commit future violations. The evidence establishes that Mr. Stubbs only opened the Grovee account after being provided with false information and lies. *See* Exhibit B to Affidavit of Timothy Stubbs at 4, 11–12. The CFTC has provided no evidence that Mr. Stubbs made any statements or communications to any ROFX investors or had any involvement in incorporating or operating Grovee. He opened one bank account, which was open for only two months. *See* ECF No. 85-1. He had no involvement in the second bank account, except to the extent that someone else apparently used his address on paperwork without his permission. Affidavit of Timothy Stubbs ¶ 20.  Mr. Stubbs furthermore had no scienter. He was unaware of what ROFX was, the business in which Grovee was actually engaged, and, apparently, the real purpose of the withdrawals. *See* Affidavit of Timothy Stubbs ¶ 9–20; *see also* Exhibits A–G to the Affidavit of Timothy Stubbs.

Mr. Stubbs wishes, moreover, to assure the Court that he has no interest (and never has had any interest) in violating the CEA. Affidavit of Timothy Stubbs ¶ 23. He has never traded commodities or foreign exchange. *Id.* He is not involved in any commodities or foreign exchange business or trading venture or knowingly been involved in any commodities or foreign exchange business or trading venture. *Id.* He has no intention of ever being involved in any commodities or foreign exchange business or trading venture. *Id.*

Based on information reported in the lawsuit, Mr. Stubbs recognizes that harm appears to have resulted to victims of the ROFX scam. Any trust he misplaced in Ms. Los resulted from their friendship, not with any knowledge or any desire to harm others.

Finally, Mr. Stubbs' occupation is unlikely to present opportunities for future violations. He is currently the controller for a privately-owned residential real estate developer in Alpharetta, Georgia. *Id.* ¶ 22. He is not involved in any commodities or foreign exchange business or trading venture, has never knowingly been involved in such a business, and has no intent or plans to ever become involved in such a business. *Id.*

In sum, there is no reasonable likelihood that Mr. Stubbs will be violating the CEA Act in the future.

C.     **The CFTC's Requested Asset Freeze, Full Accounting of Assets, Physical Inspection Demand, and Document Destruction Demand Are All Inappropriate, Unjustified, Unnecessary, and Inequitable.**

The CFTC is not entitled *cart blanche* to the extreme, intrusive, and extraordinary relief it is demanding. As part of its preliminary injunction, Plaintiff demands (1) a freeze on Mr. Stubbs assets and the repatriation of alleged funds; (2) a full accounting of Mr. Stubbs' assets; (3) an order authorizing government inspections of Mr. Stubbs' private property; (4) an order prohibiting Mr. Stubbs from "destroying, altering, or disposing of any records;" and (5) an order "enjoining Defendant from further violating the CEA and Regulations . . . ." *See* Motion at 2. The Court should deny Plaintiff's demands because Plaintiff has failed to prove that any of them are reasonable, justified, necessary, or equitable here.

First, all of these requests should be denied because Plaintiff has failed to prove that it is entitled to a preliminary injunction. The CFTC appropriately admits that these measures together constitute its requested preliminary injunction. *See* Motion at 11 ("The CFTC's request for preliminary injunctive relief is necessary to maintain the status quo by restraining Defendant's assets, preserving his books and records, and enjoining Defendant's violations of the Act and Regulations."). As shown above, because the CFTC fails to establish that "(1) a prima facie violation of the Act has occurred or is occurring; and (2) that there is a 'reasonable likelihood' of future violations," *Fingerhut*, 2021 WL 65069, at *7, the CFTC is not entitled to this preliminary injunctive relief it seeks.

But the flaws with the items specifically demanded also run much deeper than this. The requested measures are inequitable, inappropriate, and unsupported for a litany of other reasons. As the CFTC acknowledges, asset freezes, accountings of assets, orders for inspections, and the other requested items arise from this Court's equitable powers. *See* Motion at 12; *see also CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) (finding district court possesses "the full range of equitable remedies"). In this case, it would be inequitable to issue any of these requested items.

First, as part of the requested injunction, the CFTC asks the Court for an order (1) "freezing

Defendant's assets and ordering transfer and repatriation of misappropriated customer funds" and (2) requiring Defendant to provide an accounting that includes "the disposition of ROFX customers' funds from receipt until present." *See* Motion at 2. Interestingly, the CFTC accuses Mr. Stubbs of receiving a total of $14,862 from Shopostar but no monies from Grovee. *See id*. at 23–25. The evidence establishes that, at best, Mr. Stubbs was a momentary conduit for the alleged Shopostar funds and their disposition. In 2018, Ms. Los asked Mr. Stubbs if he could forward tax returns and the associated tax payments for various clients of hers to the Internal Revenue Service. *See* Exhibit J to the Affidavit of Timothy Stubbs at 2–35; Affidavit of Timothy Stubbs ¶ 21. She sent him $14,862 so that he could send cashier's checks in that amount, made payable to the United States Treasury, to the U.S. Internal Revenue Service. *See* Exhibit I to Affidavit of Timothy Stubbs at 2 (listing deposits of $8,390 and $6,472, which correspond exactly to figures referenced in ECF No. 85-1 at 23, 25). Ms. Los told Mr. Stubbs that she was making these payments on behalf of her clients. *See* Exhibit J to the Affidavit of Timothy Stubbs at 2–35; Affidavit of Timothy Stubbs ¶ 21. Those payments were sent to the Internal Revenue Service. *Id.* Accordingly, Mr. Stubbs was merely a conduit for that money to reach the U.S. Government. The $14,861 was never for Mr. Stubbs' personal use, was never put to Mr. Stubbs' personal use, and any portion of that $14,861 allegedly belonging to ROFX customers is currently in the possession of the federal government. *See id.*

Second, the CFTC has failed to make the appropriate and necessary showing with respect to any of its specifically demanded items. To freeze assets, Plaintiff must "show a concern that the Defendants' assets will disappear." *See Fingerhut*, 2021 WL 65069, at *12. That concern must be reasonable, though, as the freeze arises from the Court's equitable powers and absent a showing of reasonableness there would be no real constraint on Plaintiff's ability to demand asset freezes. In any event, in both *Fingerhut* and *FTC v. Simple Health Plans LLC*, 379 F. Supp. 1346, 1364–65 (S.D. Fla. 2019), the case upon which *Fingerhut* relied for the proposition, the courts evaluated the reasonableness of the CFTC's claimed concern. In *Simple Health Plans*, the Court considered whether defendant had foreign bank accounts and was attempting to dissipate assets frozen in a

prior order. *Simple Health Plans LLC*, 379 F. Supp. at 1364–65. In *Fingerhut*, the Court also considered evidence that defendants were engaged in dissipating assets. *See Fingerhut*, 2021 WL 65069, at *13. It also considered evidence that defendants had failed to turn over assets to a Temporary Receiver and lacked sufficient funds to cover disgorgement or restitution needs in the matter. *Id.*

Here, the CFTC has provided **no** evidence that Mr. Stubbs (1) will be dissipating any assets; (2) has failed to comply with any prior Court orders or laws on turning over assets; or (3) lacks sufficient funds to cover the purported $14,862 that Mr. Stubbs received.[18]

Moreover, the CFTC's newfound claim that there is now some "concern" about dissipation seems pulled out of thin air. Plaintiff filed its Motion for a Preliminary Injunction on January 11, 2023—469 days since September 30, 2021 (the last day of Plaintiff's purported "relevant period" for the alleged conspiracy), 350 days since January 27, 2022 (when Plaintiff filed its Complaint), and 134 days since August 31, 2022 (when Plaintiff filed its Amended Complaint). Plaintiff's Motion provides no evidence whatsoever indicating that anything has changed between any of those dates and today that suddenly makes the imposition of extraordinary preliminary remedies appropriate or necessary.

Given the complete absence of exigent circumstances indicating an asset freeze would be reasonable, Plaintiff's demanded freeze appears to be a thinly veiled request for prejudgment attachment. *See Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994) ("When faced with motions appearing to call for an attachment but labelled something else, federal courts again look past the terminology to the actual nature of the relief requested."). Plaintiff has made no showing, however, that a prejudgment attachment like this is appropriate or allowed under Rule 64 and the applicable state law. Accordingly, an asset freeze is wholly

---

[18] Notably, the CFTC does not claim that Mr. Stubbs ever received any payments from Grovee, the corporate entity that the CFTC incorrectly claims he "controlled." *See* ECF No. 85-1 at 29–30. Plaintiff alleges he received a total of $14,862 from Shopostar, *see id.* at 23–25, but provides no evidence that he had any involvement in, or knowledge of, Shopostar's alleged ROFX operations, *see* Motion at 18–19, 28–29.

unjustified and unsupported and should be denied.

Third, Plaintiff has failed to show that an accounting would be appropriate, necessary, or equitable. Courts have found accountings necessary when—yet again—the CFTC has provided the Court with evidence establishing that an accounting is needed given the defendant's handling of his assets and related behavior. *See, e.g.*, *CFTC v. Financial Tree*, 542 F. Supp. 3d 992, 1006 (E.D. Cal. 2020) (finding "[d]efendant's apparent failure to comply with this Court's [Statutory Restraining Order] . . .  supports the finding that an accounting as well as the continuation of the order to immediately make Records available to CFTC is necessary . . . ."). Here, Plaintiff has made no showing that Mr. Stubbs is engaged in any improper disposal of assets, failed to comply with any Court orders, or has engaged in any conduct that would merit the Court authorizing extraordinary preliminary measures. The evidence also establishes that the approximately $14,000 in question is in the custody or possession of the federal government. Exhibit J to the Affidavit of Timothy Stubbs at 2–35; Exhibit I to the Affidavit of Timothy Stubbs at 2; Affidavit of Timothy Stubbs ¶ 21.

Fourth, the same deficiencies noted above are true for the remaining requests—that this Court authorize government inspections of Mr. Stubbs' private property, enter an order prohibiting Mr. Stubbs from "destroying, altering, or disposing of any records, " and "enjoin[] Defendant from further violating the CEA and Regulations." *See* Motion at 2. Inspections and document-destruction orders are appropriate where there is evidence of their necessity—that the orders are necessary to stop a Defendant from destroying evidence and that there is a likelihood that the CFTC is likely to lose access to evidence absent inspections. *See Fingerhut*, 2021 WL 65069, at *13 (finding inspections and document destruction orders necessary in part because of defendants' failure to comply with discovery obligations); *Financial Tree*, 542 F. Supp. 3d at 1006 (finding "reasonable likelihood that Defendants will transfer or dissipate Assets or destroy or alter Records in the absence of a preliminary injunction clearly supports a continuation of the SRO's Asset freeze, prohibition of destruction of Records, and requirement to immediately make Records available to CFTC.").

Here, the CFTC has offered nothing establishing that there is any reasonable likelihood that documents will be destroyed absent its requested relief or that such requested relief is appropriate. The CFTC is aware that Mr. Stubbs already has a legal obligation to preserve relevant evidence in this matter and has provided no evidence indicating any likelihood that he would flout those requirements. To boot, the record establishes that Mr. Stubbs has fully complied with his discovery obligations and made concrete efforts to preserve evidence. Indeed, even though Mr. Stubbs initially disputed the relevance and scope of several of the items listed in the CFTC's First Request for Production, Mr. Stubbs and the CFTC engaged in productive meet-and-confer discussions. Mr. Stubbs ultimately dropped his objections to all but one of the CFTC's Requests for Production, which were extraordinary in breadth, burden and, in fact, constituted an improper "fishing expedition". However, even with Mr. Stubbs agreeing to allow that expedition to avoid additional costs, the CFTC has not—and cannot—put forth evidence to support its claims.

Mr. Stubbs served the CFTC on January 6, 2023 with the Notice of Completion regarding his production, which included **over 8,527 documents and evidence**. The CFTC's Requests were expansive, demanding his tax records, bank account statements, statements regarding any digital asset trading, any communications with Defendants and Nataliya Los regardless of subject matter, any documents regarding the operations of Grovee, any documents relating to the formation, incorporation, organization, and/or dissolution of any corporate entities that Mr. Stubbs controlled or managed regardless of their relevance to the CFTC's allegations, and any and all documents relating to any income that Mr. Stubbs received from any Defendant. Mr. Stubbs has also responded to the CFTC's First Request for Admissions. In sum, while other Defendants (and others) appear to be evading the CFTC and hiding overseas, Mr. Stubbs has fully engaged in discovery and will continue to engage in discovery and fully defend himself and his name. Moreover, the CFTC's own responses to Mr. Stubbs' discovery repeatedly indicate that Plaintiff lacks knowledge that Mr. Stubbs actually engaged in the alleged misconduct, which amounts to an admission that Plaintiff has failed to establish the facts necessary for it to meet its burden here. Nothing indicates that the CFTC's extraordinary demands are anything more than an attempt to

intimidate and harass Mr. Stubbs with the full power and force of the federal government.

Finally, there is no equitable justification for an order "enjoining Defendant from further violating the CEA and Regulations" when the CFTC has failed to satisfy its burden of proving a prima facie case that Mr. Stubbs violated the CEA and Regulations. Such an order would further tarnish the reputation and name of an individual with whom the CFTC should have resolved its claims months ago.

## V. CONCLUSION

Mr. Stubbs respectfully requests this Honorable Court deny Plaintiff's Motion for a Preliminary Injunction Against Defendant Timothy Stubbs, and granting such other and further relief as this Court deems appropriate.

<u>**REQUEST FOR EVIDENTIARY HEARING**</u>

Mr. Stubbs respectfully requests that if the Court were inclined to consider the CFTC's requested relief at the close of the briefing, he be allowed a full evidentiary hearing on Plaintiff's Motion for a Preliminary Injunction Against Defendant Timothy Stubbs, just as the Court conducted in the Fingerhut matter. *See Fingerhut*, 2021 WL 65069, at *2. Mr. Stubbs respectfully submits that an evidentiary hearing would assist the Court in understanding the factual issues that bear on the legal claims asserted by the CFTC and Mr. Stubbs' defenses.

Mr. Stubbs also requests that the hearing be held no earlier than 90 days from the close of briefing, so that (1) the Parties may have sufficient time to resolve disagreements over the CFTC's responses (or lack thereof) to Mr. Stubbs' First Requests for Production, First Requests for Admission, and First Set of Interrogatories, (2) Mr. Stubbs may have sufficient time to review whatever materials the CFTC ultimately produces or is ordered to produce in response to Mr. Stubbs' discovery, and (3) he have time to conduct any follow-up discovery or depositions. Mr. Stubbs strongly objects to the CFTC's current refusal to fully respond to many of Mr. Stubbs' discovery requests. For example, among other issues, Mr. Stubbs advised the CFTC through counsel that he objects to the CFTC's refusal to produce "[a]ll documents, tangible things or evidence favorable to Mr. Stubbs or which tends to exculpate him, including but not limited to all evidence falling within those described in Brady v. Maryland." *See* Plaintiff Commodity Futures Trading Commission's Responses to Defendant Timothy Stubbs' First Request for Production, attached as Exhibit L to the Affidavit of Timothy Stubbs, at 6–7. The parties have held a meet and confer conference and the CFTC has indicated that, with regard to this item, it will be reviewing additional materials and may be revising its response within the next 30 days.

Mr. Stubbs does not provide this information in order to ask the Court to adjudicate a discovery dispute. If the Parties are unable to resolve their disagreements themselves, Mr. Stubbs will file a motion to compel. Mr. Stubbs merely provides this information to support why he requests that the hearing date be held back until such a time that allows Mr. Stubbs the ability to receive and review the discovery to which Mr. Stubbs believes he is entitled.

Respectfully submitted this 6th day of February, 2023.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, FL  33131
Telephone: 305.373.9400
Facsimile: 305.995.6449

By: */s/ Daniel S. Newman*
Daniel S. Newman, Esq.
Florida Bar No. 0962767
Dan.Newman@nelsonmullins.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of February, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Daniel S. Newman*
Daniel S. Newman, Esq.
Florida Bar No. 0962767

## SERVICE LIST

**Timothy J. Mulreany, Esq.**
COMMODITY FUTURES TRADING
COMMISSION
OFFICE OF GENERAL COUNSEL
1155 21st Street NW
Three Lafayette Centre
Washington, DC 20581
Email: tmulreany@cftc.gov

**Danielle E. Karst, Esq.**
US COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street NW
Washington, DC 20581
Email: dkarst@cftc.gov

*Attorneys for Plaintiff*

**David Alan Frankel, Esq.**
LAW OFFICES OF
DAVID A. FRANKEL, P.A.
17 NE 4TH Street
Fort Lauderdale, FL 33301
Email: david@bluelotuslaw.com

*Attorney for Defendant Alla Skala*

**NOTUS LLC**
c/o Registered Agent
Colorado Registered Agent LLC
1942 Broadway Street, Suite 314C
Boulder, CO 80302
*PRO SE*

**SHOPOSTAR, LLC**
c/o Registered Agent
Colorado Registered Agent LLC
1942 Broadway Street, Suite 314C
Boulder, CO 80302
*PRO SE*

**Borys Konovalenko**
1321 Upland Dr. PMB 4787
Houston, TX 77043-4718
*PRO SE*

**GROVEE, LLC**
c/o Registered Agent
Delaware Business Incorporators
3422 Old Capitol Trail, Suite 700
Wilmington, DE 19808
*PRO SE*

**Jase Davis**
631 Jemison Rd.
Steens, MS 39766
*PRO SE*

**Anna Shymko**
3778 Shadow Ridge Ct
Duluth, GA 30096-4360
*PRO SE*