UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-20291-GAYLES

**COMMODITY FUTURES TRADING COMMISSION**,

    Plaintiff,

v.

**NOTUS LLC d/b/a ROFX, et al.**,

    Defendants,

_____/

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before the Court on Plaintiff Commodity Futures Trading Commission's (the "CFTC" or the "Commission") Motion for Preliminary Injunction Against Timothy Stubbs (the "Motion"). [ECF No. 85]. In its Motion, the CFTC moves for entry of a preliminary injunction against Defendant Timothy Stubbs ("Stubbs") for alleged violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1–27f, and accompanying CFTC Regulations (the "Regulations"), 17 C.F.R. pts. 1–190. The Court has reviewed the Motion and the record and is otherwise fully advised.[1] The Court concludes that the Commission has made a sufficient showing that Stubbs, through a common enterprise with his co-Defendants, violated 7 U.S.C. §§ 6b(a)(2)(A), (C), 6d(a)(1), 9(1) and 17 C.F.R. §§ 5.2(b)(1), (3), and 180.1(a) by accepting and misappropriating customer funds that customers intended to be used for trading in retail foreign

---

[1] At the Status Conference on August 30, 2023, the parties deferred to the Court as to whether a hearing was warranted. As set forth below, the evidence in the record is sufficient for the Court to make its findings of fact and conclusions of law.

currency ("forex") and by failing to disclose material facts to customers. Accordingly, a preliminary injunction is necessary to preserve the status quo pending the resolution of this litigation.

## I. PROCEDURAL BACKGROUND

On August 31, 2022, the Commission filed a three-count Amended Complaint against Defendants Notus LLC d/b/a ROFX ("Notus"), Easy Com LLC d/b/a ROFX ("Easy Com"), Global E-Advantages LLC a/k/a Kickmagic LLC d/b/a ROFX ("GEA"), Grovee LLC d/b/a ROFX ("Grovee"), and Shopostar LLC d/b/a ROFX ("Shopostar") (collectively the "Corporate Defendants"), and Jase Davis ("Davis"), Borys Konovalenko ("Konovalenko"), Anna Shymko ("Shymko"), Alla Skala ("Skala"), and Stubbs (the "Facilitating Defendants," together with the Corporate Defendants referred to as "Defendants"). [ECF No. 55]. The Amended Complaint sets forth the following allegations:

1) In Count I, the Commission alleges that Defendants violated 7 U.S.C. § 6b(a)(2)(A), (C), and 17 C.F.R. § 5.2(b)(1), (3).

    a) 7 U.S.C. § 6b(a)(2)(A) and (C) make it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case or paragraph (2), with the other person."

    b) The regulations set forth at 17 C.F.R § 5.2(b)(1) and (3) make it "unlawful for any person, by use of the mails, or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) [t]o cheat or defraud or attempt to cheat or defraud any person; . . . or (3) [w]illfully to deceive or attempt to deceive any person by any means whatsoever."

2) In Count II, the Commission alleges that Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

    a) 7 U.S.C. § 9(1) makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of" the rule and regulations promulgated by the Commission.

    b) The regulations set forth at 17 C.F.R. § 180.1(a) make it unlawful "for any person, directly or indirectly, in connection with any swap or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

        (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

        (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]

> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . ."

3) In Count III, the Commission alleges that Defendants violated 7 U.S.C. § 6d(a)(1) which makes it unlawful for any person to be a futures commission merchant unless such person is registered with the Commission as a futures commission merchant and that registration has not been suspended or revoked.

On October 3, 2022, the Clerk entered defaults against every Defendant but Stubbs for failure to appear, answer, or otherwise respond to the Amended Complaint. [ECF No. 75]. On October 11, 2022, Stubbs answered the Amended Complaint. [ECF No. 78].

On January 11, 2023, the Commission moved for a preliminary injunction against Stubbs. [ECF Nos. 85]. The Commission relies on the declaration of CFTC Investigator George H. Malas (the "Malas Declaration"), its 20 supporting exhibits, and 9 exhibits submitted in support of the Commission's reply brief. *See* [ECF Nos. 85-1-85-3, 95-1-95-9]. In response, Stubbs relies on his own affidavit (the "Stubbs Affidavit") and the exhibits attached thereto. *See* [ECF Nos. 90, 90-1-90-3].

## II. FINDINGS OF FACT

### A. The Fraudulent Enterprise

The fraudulent scheme at issue is centered on the fictitious, web-based entity, ROFX. Through its website,[2] www.ROFX.net, ROFX claimed to create and trade leveraged, margined, or financed agreements, contracts, or transactions in forex to U.S. and international customers using a forex trading robot which "guarantee[d] coverage of losses." [ECF No. 85-1 ¶ 6u(i). The ROFX website made several false and misleading claims such as:

---

[2] Some customers were introduced to ROFX via social media and referrals from family and friends. ECF No. 85-1 ¶ 6m.

- ROFX used the "best automated trading robot in the world."

- ROFX "guarantee[s] the safety" of customer funds.

- "Negative results of trading are covered by [ROFX's] Reserve Fund."

- ROFX has "protections built into ROFX.net" that "significantly lowers the risk" for customers including a "stop-loss system" which "minimizes losses on a bad day."

- "Guaranteed profits that average about .38% every day and in many cases about 10% in a single month."

- ROFX investors "made 100.86% profit in 2017 alone."³

*Id.* ¶ 6u i-ix. Defendants are not referenced on the ROFX website.

Customers opened ROFX trading accounts by providing their names and drivers licenses through the website. The online application did not request information about a prospective customer's net worth or inquire as to whether the prospective customer qualified as an eligible contracts participant ("ECP") or had assets in excess of $5 million. After a customer created an ROFX account, she would receive a purported "payment invoice" with a corresponding invoice number via email from support@rofx.net with instructions to deposit funds into one of the Corporate Defendant's bank accounts. Pursuant to ROFX's payment instructions, each customer made a counter deposit via cashier's check payable to one of the Corporate Defendants or a wire transfer to one or more of the Corporate Defendants' bank accounts. Notations for customers' wire transfers appeared on the Corporate Defendants' monthly bank account statements as "ROFX account deposit," "ROFX investment service," "investment transfer to ROFX," and "investment trading account." *Id.* ¶ o.

---

³ This is just a sampling of the alleged misrepresentations on the website. *See* [ECF NO. 85-1 ¶ 6u].

Ultimately, customers deposited over $58 million into the Corporate Defendants' bank accounts for forex transactions. However, the record reflects that those funds were never used for forex trading. ROFX was a fictitious company with a website designed to defraud customers. ROFX never traded forex for customers, customers never had forex trading accounts, there was no ROFX trading robot, and there were no ROFX domestic or international corporate offices as falsely advertised on the website.

The reality was that the Facilitating Defendants, individually and as controllers of the Corporate Defendants, none of whom were registered with the CFTC in any capacity, used the ROFX website to misappropriate at least $58 million.[4] Rather than use the customer funds to margin, secure, or guarantee forex transactions as promised, the Defendants immediately transferred customer funds to various offshore entities as well as to the Facilitation Defendants' personal accounts. Indeed, the Corporate Defendants' bank accounts appear to have existed for the sole purpose of collecting and moving ROFX customer funds. The offshore entities that received most of the misappropriated funds are non-trading entities that have nothing to do with forex trading. In addition to sending funds to offshore entities, the Defendants operated a Ponzi scheme, forwarding funds from later customers to earlier customers who made repeated requests for withdrawals.

**B.     Stubbs's Role in the Scheme**

Corporate Defendant Grovee accepted over $1.2 million in ROFX funds during the relevant time period. The record reflects that Stubbs controlled Grovee. Stubbs, a certified public accountant, is named as the sole member of Grovee in Grovee's Operating Agreement.[5] *See* ECF

---

[4] Notus accepted approximately $22.5 million, Easy Com accepted over $15 million, GEA accepted over $4 million, and Shopostar accepted approximately $13.5 in ROFX funds.
[5] Stubbs signed Grovee's Operating Agreement as sole member on October 15, 2020. ECF No. 95-1.

No. 95-1. The Operating Agreement empowers Stubbs with "the right and authority to manage the business and affairs of [Grovee]." *Id.* As sole member, Stubbs took several actions on behalf of Grovee, including submitting a U.S. Postal Service application for delivery of mail through Grovee's Delaware agent, entering into a Mailbox Service Agreement, applying for and obtaining an employer identification number ("EIN") from the Internal Revenue Service ("IRS") for Grovee[6], and opening an account at Bank of America for Grovee ("Account 9293").

When Stubbs opened Account 9293, he identified himself as the "Manager" of Grovee and certified that he was authorized to open the account on behalf of Grovee. Stubbs identified himself as the "Individual Owner/Sole Proprietor/Single Member LLC" and as Grovee's "Manager" on the account's signature card. Stubbs was also the only person authorized to accept deposits into Account 9293. Monthly statements for that account were sent to Stubbs's residence in Atlanta, Georgia. Stubbs accepted deposits totaling $153,000 into Account 9293. Some of the deposits contained notations indicating that they were for "ROFX Deposit" or investment accounts. Funds deposited in Account 9293 were never used for forex trading. Rather, customer funds were transferred to offshore non-trading corporate entities.

On January 20, 2021, Stubbs closed Account 9293. His connection to Grovee, however, continued. On February 6, 2021, Tedi McLendon ("McLendon") opened another account at Bank of America for Grovee ("Account 5659"). Stubbs's address was also used as the mailing address for Account 5659. Over $1 million in customer funds were deposited into Account 5659.[7]

---

[6] The IRS Letter assigning Grovee an EIN is addressed to "Grovee LLC, Timothy F. Stubbs, Sole MBR." ECF No. 95-1.

[7] While Stubbs contends that he was not involved with Account 5659 and did not authorize McLendon to use his address, there is evidence in the record that Stubbs was connected to McLendon. Indeed, on January 25, 2021, before McLendon opened the account, Stubbs mailed a cell phone to her address in New York. *See* ECF No. 95-5.

7

Stubbs's participation in the common enterprise does not appear to be limited to Grovee. Stubbs's Mississippi residence was used as a mailing address for Corporate Defendants Notus and Shopostar as well as Facilitating Defendants Davis, and Konovalenko. [ECF No. 85-1 ¶¶ 6a, 6e, 6g-6h]. In addition, there is evidence in the record suggesting that Stubbs assisted Davis with the opening of two of Easy Com's bank accounts used to misappropriate customer funds, including preparing Davis for, and transporting him to, in-person bank meetings in Atlanta.[8] *See* [ECF No. 95-4].

In response, Stubbs contends that he was duped by Nataliya Los ("Los") into opening Account 9293 and that he had no idea that the account was being used to filter ROFX customer funds. He also blames Los for the use of his mailing address. The issue with Stubbs's response, however, that it is based almost entirely on his self-serving affidavit and text messages between Stubbs and Los that are not clearly exculpatory. Stubbs disregards that his name and addresses repeatedly show up in the record with respect to several of the Corporate Defendants and Facilitating Defendants well before he opened Account 9293. Moreover, Stubbs conveniently disregards that, pursuant to the Operating Agreement, he had sole control over Grovee and controlled Account 9293 which accepted funds clearly designated for ROFX investments.

The record supports a finding that Stubbs knew about the Fraudulent Enterprise, his role in it, and the misappropriation of Customer Funds. At a minimum, the evidence supports a finding that Stubbs deliberately or recklessly avoided obtaining knowledge about the fraudulent activities of Grovee and the other Corporate Defendants. As Stubbs is a CPA, it is reasonable to conclude

---

[8] In its Reply, the CFTC states that McLendon was only twenty-one years old when she opened Account 5659 and that Stubbs was only twenty-two years old when he opened the two Easy Com's accounts. While the evidence suggests that Stubbs was clearly connected to both McClendon and Davis when they opened the accounts, the record does not reflect their ages.

8

that he either knew about the Fraudulent Enterprise or stuck his head in the sand to manufacture plausible deniability.

## III. CONCLUSIONS OF LAW

### A. Legal Standard

Generally, a party must demonstrate four criteria to obtain a preliminary injunction: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). However, the standard to obtain a preliminary injunction under the Commodity Exchange Act is lower. *Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 974 (11th Cir. 2014). "[T]raditional standards applicable to private parties seeking injunctive relief do not apply [to the CFTC.]" *Commodity Futures Trading Comm'n v. Sterling Trading Grp.*, 605 F. Supp. 2d 1245, 1290 (S.D. Fla. 2009); *accord Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978) ("In actions for a statutory injunction, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits. A prima facie case of illegality is sufficient."). Under the Act, the CFTC is entitled to a preliminary injunction when it shows (1) a prima facie violation of the Act has occurred or is occurring; and (2) that there is a "reasonable likelihood" of future violations. *Sterling Trading Grp.*, 605 F. Supp. 2d at 1290. Based on the foregoing, the Court makes the following conclusions of law.

### B. Prima Facie Showing of Violations of the Act

The Commission has met its burden of showing prima facie violations of the Act. The CFTC's evidence shows that since at least January 2018 through September 2021, Defendants,

acting as a common enterprise and through the web-based entity www.ROFX.net, accepted and misappropriated at least $58 million in funds that customers intended to be used for trading in forex. The Commission has presented evidence showing that the Corporate Defendants, through the acts of Facilitating Defendants, engaged in fraud, including by misappropriating customers' funds and failing to disclose material facts to customers. The CFTC also presented evidence showing that the Corporate Defendants failed to register with the CFTC as futures commission merchants, in violation of the Act. Based on the foregoing, the Court finds that the Commission has made a sufficient showing that Defendants have engaged in, are engaging in, or are about to engage in violations of 7 U.S.C. §§ 6b(a)(2)(A), (C), 9(1) and 17 C.F.R. §§ 5.2(b)(1), (3), and 180.1(a), and there is good cause to believe that the Corporate Defendants have engaged in, are engaging in, or are about to engage in violations of 7 U.S.C. § 6d(a)(1).

      **C.**      **Reasonable Likelihood of Future Violations**

The Commission has established a reasonable likelihood of a risk of future violations. District courts in the Eleventh Circuit consider several factors to determine the likelihood of future violations including: "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood defendant's occupation will present opportunities for future violations." *U.S. Commodity Futures Trading Comm'n v. K.B. Concepts Grp., LLC*, No. 16-CIV-24022, 2017 WL 3085088, at *4 (S.D. Fla. May 8, 2017) (citing *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)). The likelihood of future violations may be inferred from past conduct. *U.S. Commodity Futures Trading Comm'n v. Gutterman*, No. 12-21047, 2012 WL 2413082, at *7 (S.D. Fla. June 26, 2012).

Having considered these factors, the Court finds that the Commission has established a reasonable likelihood of future violations. This was not a one-time violation; rather, Defendants, though their common enterprise, committed a massive fraud over a multi-year period in deliberate pursuit of financial gain. *See U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-CIV-81311, 2013 WL 718503, at *11 (S.D. Fla. Feb. 26, 2013), *aff'd*, 749 F.3d 967 (11th Cir. 2014) (finding a reasonable likelihood of future violations because "[t]his is not a one-time fraud. This is a careful and calculated system designed to maximize profits by taking advantage of ill-advised investors."); *Commodity Futures Trading Comm'n v. Rubio*, 2012 WL 13014711, at *6 (S.D. Fla. Dec. 21, 2012) (granting injunction based on "the egregious nature of Defendant's long conduct of fraud"). Further, because Stubbs denies any wrongdoing in the face of this evidence, there is a reasonable likelihood that he will continue to engage in the same acts and practices alleged unless enjoined. Accordingly, the Commission has met its burden of showing a reasonable likelihood of future violations.

### D.     Requested Relief

#### 1.     Preliminary Injunction

The Commission moves the Court for an order of preliminary injunction against Stubbs enjoining him from committing further violations of the Act. The Court finds, as detailed above, that the Commission has met its burden and is entitled to the requested injunctive relief.

#### 2.     Accounting of Assets and Asset Freeze

The Commission also seeks an accounting of Stubbs assets and an asset freeze.  An asset freeze is appropriate where, as here, the Commission seeks disgorgement and restitution. *See Commodity Futures Trading Comm'n v. Levy*, 541 F.3d 1102, 1114 (11th Cir. 2008) (holding in the context of an injunction pending satisfaction of judgment that "a district court may freeze a

defendant's assets to ensure the adequacy of a disgorgement remedy") (citing *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (permitting asset freezes "as a means [to] preserv[e] funds for the equitable remedy of disgorgement")); *Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc.*, No. 05-CIV-21571, 2005 WL 8155180, at *10 (S.D. Fla. July 27, 2005) ("The Act clearly permits district courts to issue restraining orders and asset freezes and the legislative history of the Act clearly demonstrates that Congress intended an asset freeze to preserve the status quo pending trial"). The "burden for showing the amount of assets subject to disgorgement (and, therefore available for freeze) is light: a reasonable approximation of a defendant's ill-gotten gains . . . ." *ETS Payphones, Inc.*, 408 F.3d at 735 (internal quotation omitted). In addition, the Commission does not need to present evidence that the assets will be dissipated; rather, it need only show a concern that the Defendants' assets will disappear. *See Fed. Trade Comm'n v. Simple Health Plans LLC*, 379 F. Supp. 3d 1346, 1364 (S.D. Fla. 2019), *aff'd*, 801 F. App'x 685 (11th Cir. 2020).

The Commission's evidence provides a sufficient basis believe that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary or other redress will occur from the withdrawal, transfer, removal, dissipation, or other disposition of assets, and/or the destruction, alternation, or disposition of books and records and other documents by Stubbs, unless Stubbs is immediately restrained and enjoined by Order of the Court. Moreover, there is good cause for the Court to freeze assets owned, controlled, managed, or held by Stubbs, or in which he has any beneficial interest, and to order transfer and repatriation of assets and funds which derive from funds obtained in connection with the fraudulent scheme. Additionally, there is good cause for the Court to prohibit Stubbs from destroying, altering, or disposing of records, and/or denying CFTC access to inspect records.  Finally, there is good cause

to require an accounting by Stubbs to determine the location and disposition of customers' funds and ill-gotten gains.

## IV.     CONCLUSION

The Commission has shown prima facie violations of the Act and a reasonable likelihood of future violations by Defendants. Thus, the Court finds that a preliminary injunction is necessary to preserve the status quo, protect customers from further loss and damage, and enable the Commission to fulfill its statutory duties. Accordingly, it is **ORDERED AND ADJUDGED** that the Motion for Preliminary Injunction, [ECF No. 85], is **GRANTED** as follows:

### DEFINITIONS AND INSTRUCTIONS

For purposes of this Order, the following definitions and instructions apply:

1. The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

2. The term "records" encompasses "documents" and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34(a), and includes, but is not limited to, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations—stored in any medium from which information can be obtained or translated, if necessary, into reasonable usable form. The term "records" also refers to each and

every such item in Defendant's actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of Defendant; and (ii) all items which Defendant has a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. A record also includes the file and folder tabs associated with each original and copy.

3. "Defendant" means and refers to Defendant Stubbs as described above and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendant, and any person who receives actual notice of this Order by personal service or otherwise, insofar as he or she is acting in concert or participation with Defendant.

## **RELIEF GRANTED**

**IT IS HEREBY ORDERED THAT:**

**I.      ASSET FREEZE**

1. Defendant is immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located, including Defendant's assets held outside the United States, or as otherwise ordered by the Court.

2. Assets obtained after the effective date of this Order are not subject to the terms of this Order unless they are derived from or related to the activities alleged in the Amended Complaint.

3. Defendant shall immediately transfer and repatriate all assets and funds which directly or indirectly derive from funds obtained in connection with the scheme alleged in the Amended Complaint, wherever located, to the registry of the Clerk of the Court.

## II.     MAINTENANCE OF AND ACCESS TO BUSINESS RECORDS

4. Defendant is restrained from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of any Defendant.

5. Representatives of the CFTC shall be immediately allowed to inspect any records that, in part or in whole, contain, relate, or refer to the business activities or business or personal finances of Defendant, including, but not limited to, both hard-copy documents and electronically-stored information, wherever they may be situated and whether they are in the possession of Defendant or others. To ensure preservation and facilitate meaningful inspection and review of these records, Defendant shall allow representatives of the CFTC to make copies of these records, including complete forensic images of any devices containing any such records, and if on-site copying of these records and/or forensic imaging of these devices is not practicable, representatives may make such copies and/or forensic images off-site. After any such off-site copying and/or forensic imaging, Plaintiff shall promptly return the original documents and devices upon which electronic information is stored.

6. To further facilitate meaningful inspection and review, Defendant shall, absent a valid assertion of his rights against self-incrimination under the Fifth Amendment, promptly provide CFTC staff with:

   a. the location of all records relating or referring to the business activities and business and personal finances of Defendant;

   b. all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or

15

futures commission merchant) owned, controlled, or operated by Defendant, or to which Defendant has access; and

   c. all passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Defendant in connection with his business activities and business and personal finances.

   7. When inspecting and reviewing records and/or contents of forensic images that are subject to this Order, including those contained on computers and/or other devices, the CFTC should undertake reasonable measures to prevent review of Defendant's privileged communications and/or other non-business, non-financial materials by the CFTC's attorneys and other staff who are part of the litigation team in this matter. Moreover, Defendant or his counsel shall promptly contact Plaintiff's counsel to assert any claims of privilege relating to the inspection and review of any records or contents of forensic images that are subject to this Order and promptly cooperate with Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other non-business, non-financial materials to the CFTC's attorneys and other staff who are part of the litigation team in this matter. However, nothing herein shall excuse Defendant from full and immediate compliance with this Court's Order permitting Plaintiff to inspect and review the records and contents of forensic images which relate to Defendant's business activities and his business and personal finances.

### III. NOTICE TO FINANCIAL INSTITUTIONS AND OTHERS THAT HOLD OR CONTROL ASSETS OR RECORDS

   8. To ensure the effectiveness of the asset freeze, and pending further Order of this Court, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset or other property of Defendant shall not, in active concert or participation with Defendant, permit Defendant, or other

persons to withdraw, transfer, remove, dissipate, or otherwise dispose of any of Defendant's assets, except as directed by further order of the Court.

9. Any financial or brokerage institution, business entity, or person that receives actual notice of this Order by personal service or otherwise, shall not, in active concert or participation with any Defendant, directly or indirectly destroy, alter, or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant.

10. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendant, or has held, controlled, or maintained custody of any such account or asset of Defendant at any time since January 2018, shall not, in active concert or participation with Defendant, deny a request by the CFTC to inspect all records pertaining to every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendant, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the CFTC.

**IV.   VIOLATIONS OF THE ACT AND REGULATIONS**

11. Defendant is preliminarily enjoined from violating the Act and Regulations as charged in the Amended Complaint during the pendency of this action.

## V. PERSONS BOUND BY THIS ORDER

12. This Order is binding on any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendant, or is in active concert or participation with Defendant.

## VI. BOND NOT REQUIRED OF PLAINTIFF

13. As Plaintiff CFTC has made a proper showing under 7 U.S.C. § 13a-1(b), it is not required to post any bond in connection with this Order.

## VII. FORCE AND EFFECT

14. This Order shall remain in full force and effect until further order of this Court, and this Court retains jurisdiction of this matter for all purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of September, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE