UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-20291-GAYLES-TORRES

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

                v.

NOTUS LLC d/b/a ROFX, et al.,

                Defendants.

_____/

ORDER OF DEFAULT FINAL JUDGMENT, PERMANENT INJUNCTION,
CIVIL MONETARY PENALTY, AND OTHER EQUITABLE
RELIEF AGAINST JASE DAVIS, BORYS KONOVALENKO, ANNA SHYMKO,
ALLA SKALA, EASY COM LLC, GLOBAL E-ADVANTAGES LLC,
GROVEE LLC, NOTUS LLC, AND SHOPOSTAR LLC

THIS CAUSE came before the Court upon Plaintiff Commodity Futures Trading Commission's ("CFTC" or "Plaintiff") Motion and Supporting Memorandum for an Order of Default Final Judgment, Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief against the following nine defendants: Facilitating Defendants (1) Jase Davis ("Davis"), (2) Borys Konovalenko ("Konovalenko"), (3) Anna Shymko ("Shymko"), (4) Alla Skala ("Skala"), and Corporate Defendants (5) Easy Com LLC d/b/a ROFX ("Easy Com"), (6) Global E-Advantages LLC a/k/a Kickmagic LLC d/b/a ROFX ("GEA"), (7) Grovee LLC d/b/a ROFX ("Grovee"), (8) Notus LLC d/b/a ROFX ("Notus"), and (9) Shopostar LLC d/b/a ROFX ("Shopostar") (hereinafter, collectively "Defaulting Defendants"[1]). [ECF No. 157]. The Court has

---

[1] The Defaulting Defendants include all Defendants except for Defendant Timothy Stubbs. As discussed below, Plaintiff and Stubbs have entered into a Consent Order for Permanent Injunction and Other Equitable Relief. [ECF No. 130].

reviewed the Motion and the record and is otherwise fully advised. For the reasons stated below, and good cause having been shown, the Motion is granted and final judgment by default is entered pursuant to Fed. R. Civ. P. 55(b).

## I.      BACKGROUND

1.      On August 31, 2022, the CFTC filed a three-count Amended Complaint against five corporate entities and five individuals to enjoin a foreign currency (forex) fraud perpetrated by Defendants. [ECF No. 55]. On October 3, 2022, the Clerk entered defaults against Defaulting Defendants pursuant to Fed. R. Civ. P. 55(a)—Easy Com, GEA, Grovee, Notus, Shopostar, Davis, Konovalenko, Shymko, and Skala—for failure to appear, answer, or otherwise plead to the Amended Complaint. [ECF No. 75]. To date, Defaulting Defendants have failed to answer the Amended Complaint, failed to defend, or otherwise participate in the litigation.[2]

2.      On September 22, 2023, the Court entered a Preliminary Injunction Order against Defendant Stubbs, the sole non-Defaulting Defendant in this case. [ECF No. 124]. On December 19, 2023, the Court entered a Consent Order of Permanent Injunction and Other Statutory and Equitable Relief against Stubbs, with the amounts of restitution, disgorgement, and civil monetary penalty to be determined at a later date.[3] [ECF No. 130].

3.      Plaintiff seeks a default judgment against the nine Defaulting Defendants, including a permanent injunction and permanent trading and registration bans, restitution, and a civil monetary penalty. The entry of a default judgment of permanent injunction is warranted by

---

[2] Defendant Skala filed a Motion to Set Aside the Clerk's Default on January 10, 2024, [ECF No. 134], but subsequently withdrew her Motion. [ECF No. 151]. Skala's counsel, David Frankel, entered his appearance in this case on February 28, 2022, [ECF No. 45], but has not moved to withdraw as Skala's counsel.

[3] The Court understands that Plaintiff and Defendant Stubbs have agreed upon the amounts of monetary sanctions to be paid by Stubbs pursuant to the Consent Order, and that they will submit a Supplemental Consent Order to the Court for approval on or before May 1, 2024.

Defaulting Defendants' failure to defend this action and is necessary and appropriate to protect defrauded customers.

## II.    THE PARTIES

**A.    PLAINTIFF**

4.      The CFTC is an independent federal regulatory agency charged by Congress with the administration of the Act and Regulations. The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581. [ECF No. 55 ¶ 13].

**B.    DEFENDANTS**

5.      Easy Com LLC d/b/a ROFX[4] is a New Hampshire limited liability company whose principal office address is 155 Fleet Street, Portsmouth, New Hampshire, 03801. *Id.* ¶ 15. Easy Com is an entity which accepted over $15.6 million in ROFX customer funds during the Relevant Period. *Id.* ¶¶ 15, 74-81; [ECF No. 157-1 ¶¶ 8, 10]. Shymko and Davis are, or were, owners and members of Easy Com. Easy Com has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 15].

6.      Global E-Advantages LLC a/k/a Kickmagic LLC d/b/a ROFX is a Delaware limited liability company and a New York foreign limited liability company formed on January 16, 2015, with a service of process address at 55 14th Avenue, North Tonawanda, New York 14120. *Id.* ¶ 16. GEA is an entity which accepted over $4.2 million in ROFX customer funds during the Relevant Period. *Id.* ¶¶ 16, 82-90; [ECF No. 157-1 ¶¶ 8, 11, 13]. Skala is, or was, the "sole member" and "Manager" of GEA. [ECF Nos. 55 ¶¶ 82-85; 150-1 at 6; 150-13 at 1-15]. GEA has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 16].

---

[4] ROFX is an abbreviation for "robot forex trading," and is a fictitious, web-based entity that operated via the website, *www.ROFX.net*. ROFX has never been registered with the CFTC in any capacity. [ECF No. 85-2].

7.     Grovee LLC d/b/a ROFX is a Delaware limited liability company whose registered agent's address is 3422 Old is a Delaware limited liability company whose registered agent's address is 3422 Old Capitol Trail, Suite 700, Wilmington, Delaware 19808. *Id.* ¶ 17. Grovee is an entity which accepted over $1.2 million in ROFX customer funds during the Relevant Period. [ECF Nos. 55 ¶¶ 17, 62-72; 157-1 ¶¶ 8, 12]. Grovee has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 17].

8.     Notus LLC d/b/a ROFX is a dissolved Colorado limited liability company that was incorporated on October 27, 2014, with a former principal address of 3801 East Florida Avenue, Suite 400, Denver, Colorado 80210. [ECF No. 55 ¶ 48]. Notus was previously formed in Oregon on August 16, 2013, by Konovalenko and dissolved by Stubbs in 2017. *Id.*; [ECF No. 85-1 ¶ 6a]. Konovalenko subsequently re-formed Notus in Colorado using Stubbs' residence as its principal place of business. [ECF NO. 55 ¶ 48]. Notus is an entity which accepted over $22.4 million in ROFX customer funds Defendants misappropriated from at least January 2018 through September 2021 ("Relevant Period"). *Id.* ¶¶ 53-61; [ECF No. 157-1 ¶¶ 6a-6b, 8-9]. Konovalenko, Shymko, and Skala are, or were, owners or members of Notus. [ECF No. 55 ¶¶ 47-61]. Notus has never been registered with the CFTC. *Id.* ¶ 14.

9.     Shopostar LLC d/b/a ROFX is a Colorado limited liability company whose principal office address is 7887 East Belleview Avenue, Suite 1100, Denver, Colorado 80011, and principal office mailing address is 6619 Brock Circle, Brandon, Mississippi 39042. *Id.* ¶ 18. Shopostar is an entity which accepted over $13.5 million in ROFX customer funds during the Relevant Period. *Id.* ¶¶ 18, 91-99; [ECF No. 157-1 ¶¶ 8, 14]. Konovalenko is, or was, an owner and manager of Shopostar. *Id.* Shopostar has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 18].

10.     Jase Davis resides in Brandon, Mississippi, and upon information and belief, was born in Ukraine. *Id*. ¶ 19. Davis purchased Easy Com from Anna Shymko in November 2020. *Id.* ¶ 75. He represents himself as the sole member of Easy Com and is the sole signatory on two Easy Com bank accounts at Bank of America and JP Morgan Chase, into which he accepted over $15.6 million in ROFX customer funds during the Relevant Period. *Id.* ¶¶ 15, 19, 75-81; [ECF No. 157-1 ¶¶ 8, 10]. Davis has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 19].

11.     Borys Konovalenko is a Ukrainian citizen and, upon information and belief, currently resides in Ukraine. *Id.* ¶ 20. Konovalenko is, or was, an owner and managing director of Notus and is, or was, an owner and manager of Shopostar. Konovalenko was a signatory or co-signatory to U.S. bank accounts into which he accepted over $23 million in ROFX customer funds during the Relevant Period, including: (1) a Notus account at Bank of America which accepted over $9.2 million in customer funds; (2) two Shopostar accounts at Bank of America which accepted $13.5 million in customer funds; and, (3) two Kickmagic accounts at Bank of America which accepted $349,569 in customer funds. *Id.* ¶¶ 20, 47-50, 87-93, 96-99; [ECF No. 157-1 ¶¶ 8-9, 13-14]. Konovalenko also personally accepted funds from these accounts during the Relevant Period. He has never been registered with the CFTC in any capacity. [ECF Nos. 55 ¶ 20; 85-1 ¶ 6g].

12.     Anna Shymko resides in Duluth, Georgia. Am. Compl. ¶ 21. Shymko was the managing member of Notus beginning April 14, 2021, until September 16, 2021, when she filed articles dissolving Notus with the Colorado Secretary of State. [ECF Nos. 55 ¶¶ 21, 59-61, 74-75; 85-1 ¶ 6j]. In addition, Shymko organized and was the initial managing member of Easy Com beginning September 22, 2020, until November 3, 2020, when she purportedly sold all of her

interests in Easy Com to Jase Davis. [ECF No. 55 ¶¶ 21, 59-61, 74-75]. Shymko has never been registered with the CFTC in any capacity.  *Id.*

13.     Alla Skala is a Canadian citizen who was born in Ukraine. *Id.* ¶ 22. Upon information and belief, Skala resides or resided in Grand Island, New York, and/or Fort Erie, Ontario. *Id.* Skala purchased and appointed herself as the manager of Notus on or about November 12, 2019, and began representing herself as the Sole Member, Director, and/or Owner of Notus. *Id.* ¶¶ 22, 52-58; [ECF No. 85-1 ¶ 6f]. On December 6, 2019, Skala filed Notus's foreign limited liability application with the New York Secretary of State. *Id.* Skala is a signatory and co-signatory to U.S. bank accounts into which she accepted over $24 million in ROFX customer funds during the Relevant Period, including: (1) a Notus account at Key Bank ending in 2270 ("Notus Key Bank account *2270"), which received over $13.2 million in ROFX customer funds while Skala controlled this account and during the Relevant Period; (2) a Notus account at Bank of America ending in 1612 ("Notus BOFA account *1612"), which received over $9.2 million in ROFX customer funds during the Relevant Period, including over $7.2 million in ROFX customer funds while Skala was the sole owner of Notus beginning on November 12, 2019;[5] and, (3) a GEA account at M&T Bank ending in 9280 ("GEA M&T account *9280"), which received over $4.2 million in ROFX customer funds while Skala controlled this account and during the Relevant Period. [ECF Nos. 55 ¶¶ 53-58, 82-84; 157-1 ¶¶ 8-9, 11]. In addition, Skala personally accepted at least $292,641 in funds from these and other accounts owned or controlled by Defendants from January 2020 to May 2021, including accepting $247,405 in ROFX customer funds during the same period through her Canadian company, Lunar Blue Services Inc. [ECF Nos. 55 ¶ 22; 150-1 ¶¶ 7c-7d]. Skala has never been registered with the CFTC in any capacity. [ECF No. 55 ¶ 22].

---

[5] *See* [ECF Nos. 150-1 ¶ 7d]; 157-1 ¶ 8].

14.     Timothy F. Stubbs is a U.S. citizen who is a Certified Public Accountant residing in Brandon, Mississippi and/or the Atlanta, Georgia area. [ECF No. 130 ¶ 22]. Upon information and belief, Stubbs resides or resided at one or both of the Brandon, Mississippi addresses provided on various Notus and Shopostar corporate filings with both the Oregon Secretary of State and Colorado Secretary of State. *Id*. Stubbs represents himself as the manager of Grovee and is the signatory on a Grovee account at Bank of America into which he accepted $153,000 in customer funds during the Relevant Period. *Id.* ¶ 55; [ECF No. 157-1 ¶¶ 8,12]. Stubbs personally accepted funds from this account and other Corporate Defendants' bank accounts accepting ROFX customer funds. [ECF No. 130 ¶ 48]. He has never been registered with the CFTC in any capacity.  *Id*. ¶ 22. On December 19, 2023, the Court entered a Consent Order of Permanent Injunction and Other Statutory and Equitable Relief against Stubbs, with the amounts of restitution, disgorgement, and civil monetary penalty to be determined at a later date. *Id*. ¶ 22.

## C.     RELATED ENTITIES

15.     ROFX is a fictitious, web-based entity that operated via the website which was hosted in the U.S. [ECF No. 55 ¶ 24]. Upon information and belief, ROFX is neither registered to conduct business in the U.S. nor is it a legally organized collective entity. *Id*. Although the website contained representations that ROFX purportedly operated from offices in Miami, London, and Hong Kong, ROFX had no offices, no employees, and upon information and belief, was created solely to further Defendants' fraudulent common enterprise. *Id*. ROFX has never been registered with the CFTC in any capacity. *Id.* ¶ 24; [ECF No. 85-2 at 12-13].

### III.    COMPLAINT ALLEGATIONS AND SUPPORTING EVIDENCE

**A.    Overview of Defendants' Fraudulent Scheme**

16.    According to the Amended Complaint, the factual allegations of which the Court takes as true for purposes of default judgment, during the Relevant Period, Defaulting Defendants, acting as a common enterprise and through, and/or in conjunction with, the web-based entity *www.ROFX.net*, misappropriated at least $57.5 million[6] as part of a fraudulent scheme in, and/or in connection with, the offering of leveraged, margined or financed agreements, contracts, or transactions in retail forex to U.S. and international customers ("ROFX customers") who were not eligible contracts participants ("ECPs"). [ECF Nos. 55 ¶¶ 1, 6, 45-46; 157-1 ¶¶ 2, 8]. Defaulting Defendants—operating through a maze of interrelated companies, shared managers, and members—accepted funds from ROFX customers that were intended to be used to margin, leverage or finance agreements, contracts, or transactions in forex as described on the ROFX website. [ECF No. 55 ¶¶ 1, 6, 45-46]. They accepted customers' funds while acting as a single, integrated common enterprise and misappropriated all of the funds they accepted from over 1,100 ROFX customers by immediately wiring the funds to offshore entities with no connection to forex trading. *Id.*; [ECF No. 157-1 ¶ 16].

17.    Corporate Defendants were interrelated shell companies serving no legitimate business purpose other than to defraud ROFX customers. [ECF No. 55 ¶¶ 45-46]. They operated together as ROFX through the ROFX website, shared the same officers and purported business addresses, accepted ROFX customer funds into their various bank accounts, and transferred ROFX customer funds to common offshore entities. *Id.*

---

[6] This is the total amount of ROFX customer funds accepted by all Defendants, including the amount of ROFX customer funds accepted by Defendant Stubbs and deposited into Corporate Defendant Grovee's BOFA account *9293.

18. Facilitating Defendants controlled Corporate Defendants during the Relevant Period, were all corporate officers of Corporate Defendants, and used Corporate Defendants' bank accounts to collect, transfer, and disburse ROFX customer funds. *Id*. ¶ 46. Facilitating Defendants created one or more of the Corporate Defendants in the United States and/or submitted corporate documents on behalf of Corporate Defendants utilizing common officers, addresses, and registered agents. *Id*. Facilitating Defendants also opened U.S. bank accounts on behalf of one or more of the Corporate Defendants, controlled Corporate Defendants' bank accounts including the deposits to and withdrawals from these accounts, and transferred ROFX customer funds between and amongst themselves and to the same offshore entities. *Id*.

**B.    Defaulting Defendants Failed to Disclose Material Facts to ROFX Customers**

19. Defaulting Defendants obtained customers through the ROFX website, wherein ROFX claimed to create and trade retail forex accounts on behalf of customers utilizing a highly successful automated trading robot. *Id.* ¶ 29. ROFX touted that it was the "best automated forex trading robot in the world," and the only trading system that "guarantee[d] coverage of losses." *Id*. In addition to the ROFX website, some customers were introduced to ROFX via social media and referrals by friends and family who had invested with ROFX. *Id*.

20. The ROFX website made false and misleading claims, which included, but were not limited to the following: (1) "ROFX is the best automated trading robot in the world"; (2) "[T]he ROFX.net service is an exceptional service that guarantees your profits"; (3) "The inbuilt algorithms and neural [sic] networks are in hand to place the perfect trade when opportunity presents itself. You do not have to make any intervention."; (4) "When you use ROFX.net, the developers assure that you will make no losses"; (5) "This platform is perhaps the only one that

covers your losses"; and (6) "The stop-loss system blocks trading at the minimum loss ('no loss forex robot')." [ECF No. 55 ¶ 30].

21.     Customers opened an ROFX trading account by providing their name and driver's license through the ROFX website. *Id.* ¶ 36. The online account opening application did not seek any information about prospective customers' net worth and did not inquire as to whether a prospective customer qualified as an ECP or had assets in excess of $5 million. *Id.* ROFX permitted customers to fund an account with U.S. dollars (USD), Euros (EUR), or Bitcoin (BTC). *Id.* After customers established an ROFX account, they typically received a purported "payment invoice" with a corresponding invoice number via email from *support@rofx.net* with instructions to deposit their funds in Corporate Defendants' bank accounts. *Id.* ¶ 37.

22.     Pursuant to the ROFX's payment invoice's instructions, customers made a counter deposit via a cashier's check payable to the Corporate Defendants or a wire transfer to one or more of Corporate Defendants' bank accounts. *Id.* Notations for customers' wire transfers appeared on Corporate Defendants' monthly bank account statements as "ROFX account deposit," "ROFX investment service," "investment transfer to ROFX," and "investment trading account," among others. *Id.* ¶ 38. In some instances, Corporate Defendants' monthly bank account statements and wire records showed individual customer names with specific invoice numbers provided to customers of ROFX. *Id.*

23.     Davis, Konovalenko, Skala, and Stubbs accepted the customer funds into Corporate Defendants' bank accounts and did not use the funds for trading, while failing to disclose certain material facts to customers, including but not limited to: (1) Defendants misappropriated all ROFX customer funds they accepted into Corporate Defendants' bank accounts; (2) Defendants did not trade forex for customers after accepting ROFX customers' funds; (3) Corporate Defendants were

not legitimate business enterprises, and Defendants did not forward ROFX customers' funds to any entity that traded funds on behalf of ROFX customers; (4) ROFX customers had no forex trading accounts; and (5) there was no ROFX forex trading robot. *Id*. ¶¶ 44-46; [ECF Nos. 7-1 ¶¶ 6aa-bb; 7-3 ¶ 4].

**C.     Defaulting Defendants Misappropriated Customer Funds**

24.     Defaulting Defendants did not use any of the customer funds it accepted to margin, secure or guarantee forex transactions to enter into any forex contracts on behalf of customers as promised on the ROFX website. [ECF Nos. 55 ¶¶ 1, 4, 40; 157-1 ¶ 16]. Instead, Defaulting Defendants misappropriated the funds by accepting customer funds into Corporate Defendants' bank accounts and immediately transferring those same funds to various offshore entities as well as to Facilitating Defendants' personal accounts. *Id*. Defendants' corporate bank accounts appear to have existed for the sole purpose of collecting and moving ROFX customer funds because there does not appear to have been other legitimate business activity in these accounts. The offshore entities that ultimately received most of the ROFX customer funds are non-trading entities having nothing to do with forex trading. [ECF Nos. 55 ¶¶ 1, 4, 45-46; 157-1 ¶ 16].

25.     Defaulting Defendants also misappropriated customer funds by providing some customers with small withdrawals of purported "profits" via wires from one or more of the Corporate Defendants' bank accounts and/or offshore entities. [ECF Nos. 55 ¶ 41; 85-1 ¶ 6w; 157-1 ¶ 15]. Customers made repeated requests for withdrawals directly through the ROFX website and via ROFX's email. [ECF Nos. ¶ 43; 85-1 ¶¶ 6x-6y]. As no trading took place, and no profits were generated, any payments to customers of purported "profits" were, in reality, funds from later customers to earlier customers in the nature of a Ponzi scheme. [ECF Nos. 55 ¶ 41; 157-1 ¶ 15]. The majority of customers were unable to withdraw funds from their accounts despite the false

representations on ROFX's website that customers could withdraw funds at any time with no withdrawal fees. [ECF Nos. 55 ¶ 42; 85-1 ¶ 6x]. Some customers who attempted to terminate their accounts or withdraw large amounts were advised by purported ROFX employees via email or telephone that there was an issue with the customer's account preventing any withdrawal of funds. [ECF Nos. 55 ¶ 43; 7-1 ¶ 6y; 7-3 ¶¶ 10, 13].

**D.     Defaulting Defendants Easy Com, GEA, Grovee, Notus, and Shopostar Acted as Unregistered Futures Commission Merchants**

26.     During the Relevant Period, the five Corporate Defendants—Easy Com, GEA, Grovee, Notus, and Shopostar—acted in a capacity as futures commission merchants ("FCMs") by doing business as ROFX, soliciting or accepting orders for retail forex transactions via the website, and accepting funds in or in connection with these activities to leverage, margin or guarantee contracts, agreements or transactions in forex.  Corporate Defendants each acted as FCMs without being registered with the CFTC. [ECF Nos. 55 ¶¶ 14-18, 45-46; 7-1 ¶ 5a; 7-2].

## IV.     DEFAULT JUDGMENT IS PROPER

**A.     Defaulting Defendants' Failure to Answer Warrants Entry of Default Final Judgment**

27.     Fed. R. Civ. P. 55(b) authorizes the CFTC to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action. *See United States v. Swartout*, 293 F. Supp. 3d 1377, 1378 (S.D. Fla. 2018).

28.     Under Fed. R. Civ. P. 55(b) a court may "enter a final judgment of default against a party who has failed to plead in response to a complaint." *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com*, No. 0:15-cv-62579, 2016 WL 3369529, at *3 (S.D. Fla. Apr. 12, 2016). "The entry of default constitutes an admission . . . [to] the well-pleaded allegations in the Complaint*." Id.* at *3. Granting a motion for default judgment lies within a district court's sound discretion. *See id.*

29.     Defaulting Defendants were properly served with the Amended Complaint and Summons on September 2, 2022. [ECF Nos. 60-70]. They all failed to respond to the Amended Complaint. Pursuant to Fed. R. Civ. P. 55(a), the CFTC submitted applications for the Clerk's entries of default against Defaulting Defendants. [ECF No. 73]. On October 3, 2022, the Clerk of the Court entered defaults against all of the Defaulting Defendants. [ECF No. 75]. Consequently, Defaulting Defendants have admitted to all of the well-pleaded allegations in the Amended Complaint, and liability is established. *See Buchanan*, 820 F.2d at 361 (internal citations omitted); *Abercrombie,* 2016 WL 3369529, at *3.

**B.     Jurisdiction and Venue**

30.     This Court has jurisdiction over this action under 28 U.S.C. 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, 7 U.S.C. § 13a-1 authorizes the CFTC to seek injunctive and other relief against any person whenever it appears to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

31.     Venue properly lies in this District pursuant to 7 U.S.C. § 13a-1(e) because Defendants transacted business in the Southern District of Florida, and certain transactions, acts, and practices alleged in the Amended Complaint occurred within this District.

**C.     Defaulting Defendants Failed to Provide a Meritorious Defense**

32.     Defaulting Defendants have failed to show a meritorious defense to this action. In order to establish a meritorious defense, the moving party "must make an affirmative showing of a defense that is likely to be successful." *In re Worldwide Web Sys., Inc*., 328 F.3d 1291, 1296

(11th Cir. 2003) (quoting *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)). As Defaulting Defendants have presented no facts to the Court and have not denied any allegation of the Amended Complaint, they have not shown a meritorious defense.

**D.      The CFTC Will Be Prejudiced if Default Judgment Is Not Entered**

33.      Plaintiff will suffer prejudice if default judgment is not entered. Congress has charged the CFTC with enforcing the Act to protect customers in the commodity futures markets. The Act is a "remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived." *CFTC v. Omega Knight 2, LLC*, No. 1:18-cv-22377, 2019 WL 6796128, at *12 (S.D. Fla. Sept. 16, 2019) (quoting *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1337 (S.D. Fla. 2014)). Absent default judgment, Plaintiff will be frustrated in its ability to fulfill its mandate. *Id.*

**E.      The Well-Pleaded Facts of the Amended Complaint Establish that Defaulting Defendants Violated the Commodity Exchange Act**

**1.      Defaulting Defendants Committed Fraud by Making Material Omissions and Misappropriating Customer Funds in Violation of 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3) (2023) (Count 1)**

34.      7 U.S.C. § 6b(a)(2)(A) and (C) of the Act makes it unlawful for any person: (A) to cheat or defraud or attempt to cheat or defraud another person; or (C) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with certain off-exchange commodity contracts. Similarly, in substantially identical language to 7 U.S.C. § 6b(a)(2), 17 C.F.R. § 5.2(b)(1) and (3) (2023) makes it unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, in or in

connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

### a. Defaulting Defendants Committed Fraud by Material Omissions

35.     To establish liability for fraud based on misrepresentations and omissions under 7 U.S.C. § 6b(a)(2), the CFTC must prove that: (1) a misrepresentation, false or misleading statement, or deceptive omission was made; (2) with scienter; and (3) the misrepresentation, false or misleading statement, or deceptive omission was material. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *see also In re Slusser*, CFTC No. 94-14, 1999 WL 507574, at *9 (July 19, 1999), *aff'd and remanded on other grounds sub nom.*, *Slusser v. CFTC*, 210 F.3d 783, 785-86 (7th Cir. 2000) (holding that CFTC's findings regarding fraud were supported by substantial evidence). Similarly, 17 C.F.R. § 5.2(b)(1), (3) (2023) makes it unlawful, in connection with off-exchange retail forex transactions, to use the mails or any means or instrumentality of interstate commerce to cheat or defraud or attempt to cheat or defraud any person, or willfully deceive any person by any means. *CFTC v. Alcocer*, No. 1:12-cv-23459, 2013 WL 12104892, at *9 (S.D. Fla. Apr. 5, 2013) (default order).

36.     The first and third elements are met here because Facilitating Defendants, individually and on behalf of Corporate Defendants, made deceptive omissions by failing to disclose material facts to customers and prospective customers while doing business as ROFX. [ECF No. 55 ¶¶ 5, 44]. Whether a misrepresentation or omission has been made is determined objectively and holistically, through examination of the "overall message" and the "common understanding of the information conveyed." *R.J. Fitzgerald*, 310 F.3d at 1328. A statement or omission is material if "a reasonable investor would consider it important in deciding whether to make an investment." *Id*. at 1328-29. "Misrepresentations concerning profit and risk go to the heart

of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000) *rev'd in part on other grounds*, *CFTC v. Baragosh,* 278 F.3d 319, 333 (4th Cir. 2002).

37.     Facilitating Defendants, individually and on behalf of Corporate Defendants, knowingly and/or recklessly failed to disclose material facts to actual and prospective customers, including by failing to disclose that: (1) there is no legal entity known as "ROFX," and ROFX does not utilize a forex "robot" or trade forex; (2) Defaulting Defendants never opened any trading accounts in customers' names and conducted no trading on their behalf; (3) Defaulting Defendants misappropriated customer funds by accepting funds intended for forex trading into its various bank accounts and subsequently wiring those funds to offshore entities having nothing to do with trading; and (4) purported "returns" paid to some customers were in fact the principal deposits of other customers and were not generated by profitable trading. [ECF No. 55 ¶¶ 5, 44].

### b.     Defaulting Defendants Committed Fraud by Misappropriation

38.     Misappropriation of customer funds in connection with forex trading constitutes fraud in violation of 7 U.S.C. § 6b(a)(2)(A) and (C). *See CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012) (finding that "[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation" and granting summary judgment to CFTC on claims that defendant's misappropriation of customer funds violated 7 U.S.C. §§ 6b and 6*o*); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) ("Defendant's misappropriation of funds entrusted to him for trading purposes is 'willful and blatant fraudulent activity' that clearly violates Section 4b(a) of the Act." (quoting *Noble Wealth*, 90 F. Supp. 2d at 687)).

39.     Facilitating Defendants, misappropriated customer funds in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) by, among other things, accepting the deposit of ROFX customer funds into bank accounts in the names of Corporate Defendants and failing to use the funds to trade as promised. [ECF No. 55 ¶¶ 1, 40]. Instead, Facilitating Defendants converted the customer funds to Defaulting Defendants' own personal use and transferred the funds to various offshore entities having nothing to do with forex. *Id*. Defaulting Defendants also misappropriated ROFX customer funds by using later customer funds to return a small amount of funds to certain earlier customers as withdrawals of purported principal, or as purported "profits." *Id*. ¶ 41.

### c.     Defaulting Defendants Acted with Scienter

40.     Facilitating Defendants acted with the requisite scienter to violate 7 U.S.C. §§ 6b, 9(1) and 17 C.F.R. §§ 5.2(b) and 180.1(a) (2023). The same scienter standard applies to prove a violation of 7 U.S.C. § 6b(a)(2) and 17 C.F.R. § 5.2(b), or 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) (2023). *See CFTC v. Southern Trust Metals, Inc*., No. 1:14-cv-22739, 2016 WL 4523851, at *6, *7 (S.D. Fla. Aug. 29, 2016), *aff'd in relevant part*, 880 F.3d 1252 (11th Cir. 2018). To prove scienter, the CFTC must show that Defendants' conduct was either intentional or reckless—a standard that is satisfied if "Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald*, 310 F.3d at 1328 (discussing scienter element in the context of 7 U.S.C. § 6b claims); *see also CFTC v. Kraft Foods Grp., Inc*., 153 F. Supp. 3d 996, 1007 (N.D. Ill. 2015) (discussing scienter element in the context of fraud claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 and adopting scienter standard for analogous 7 U.S.C. § 9(1) and Regulation 180.1(a) claims). The scienter element can also be established when a defendant's conduct "involves highly unreasonable omissions or misrepresentations that present a danger of misleading [customers]

which is either known to the Defendant or so obvious that Defendant must have been aware of it." *R.J. Fitzgerald*, 310 F.3d at 1328 (internal quotations omitted). The CFTC need not prove "an evil motive or intent to injure the customer." *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987).

41.     The well-pleaded allegations in the Amended Complaint show that Facilitating Defendants acted knowingly or, at the very least with reckless disregard for the truth of the fraudulent conduct. Through bank accounts they controlled as owners or officers of Corporate Defendants, they knowingly or recklessly accepted tens of millions of dollars in ROFX customer funds and then transferred those funds to offshore bank accounts controlled by foreign entities that had no connection to forex trading. As signatories on Corporate Defendants' bank accounts, Facilitating Defendants had personal knowledge of the origin of funds being accepted into the accounts and were responsible for the disposition of those funds. Because Facilitating Defendants had control over the bank accounts from which tens of millions in ROFX customer funds were repeatedly accepted and misappropriated, scienter is therefore established. *Driver*, 877 F. Supp. 2d at 978 (finding fraud with requisite scienter where defendant "had control over the bank accounts where [customer] funds were deposited and controlled the futures trading accounts").

42.     Facilitating Defendants accepted ROFX customer funds over a multiple-year period, knowing they were not trading forex for ROFX customers, knowing they had no legitimate business relationship with ROFX customers, and knowing they were misappropriating funds they accepted from ROFX customers. [ECF No. 55 ¶¶ 38, 41]. In addition, they also sent some funds back to certain ROFX customers who requested the return of funds via the ROFX website and ROFX email address. *Id*. ¶ 41; [ECF Nos. 7-1 ¶ 6w; 157-1 ¶ 15]. Direct evidence of their knowledge is therefore found in the bank records from: (1) customer deposit wire notations such as "funding ROFX trading account," "investment to ROFX.net," "ROFX account deposit," and

"ROFX investment service"; (2) customer deposits specifying individual customer names with invoice numbers; and, (3) Defendants' return of funds to customers as customers requested through the ROFX website and/or ROFX customer email address. [ECF Nos. 55 ¶¶ 38, 41; 7-1 ¶¶ 6p-6q, 6y]. None of the Facilitating Defendants used any of the ROFX customer funds for trading in any manner—in direct contravention of ROFX customers' intent upon making said deposits. [ECF Nos. 55 ¶¶ 40-41; ECF No. 7-1 ¶ 6v; 157-1 ¶ 16].

43.     Based on the actions of Facilitating Defendants, their scienter can be imputed to Corporate Defendants. Courts have imputed scienter to corporations based on the actions of certain corporate employees or agents. *See, e.g., Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Corporations, of course, have no state of mind of their own. Instead, the scienter of their agents must be imputed to them."); *In re Spear & Jackson Sec. Litig.,* 399 F. Supp. 2d 1350, 1358 (S.D. Fla. 2005) ("the inference of scienter can arise from an aggregation of particularized facts, even if each individual fact standing alone does not create a sufficiently strong inference"). Therefore, Corporate Defendants acted with the requisite scienter and violated 7 U.S.C. §§ 6b, 9(1) and 17 C.F.R. §§ 5.2(b) and 180.1(a) (2023).

**2.     Defaulting Defendants Committed Fraud by Deceptive Device or Contrivance in Violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) (2023) (Count Two)**

44.     7 U.S.C. § 9(1) provides, in relevant part, that "[i]t shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with . . . a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall regulate . . . ." 17 C.F.R. § 180.1(a) (2023) similarly provides, in relevant part, that "[i]t shall be unlawful for any person,

directly or indirectly, in connection with any . . . contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or] (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . ."

45.     To prove a violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 (2023), the CFTC must show that Defendants: (1) engaged in prohibited conduct (*i.e.*, employed a fraudulent scheme, made material misrepresentations or omissions, or engaged in a fraudulent business practice); (2) in connection with any commodity in interstate commerce; and (3) with scienter. *Hunter Wise*, 21 F. Supp. 3d at 1347; *see also SEC v. Lucent Techs., Inc.,* 610 F. Supp. 2d 342, 349-50 (D.N.J. 2009) (discussing Rule 10b-5 requirements); *CFTC v. McDonnell,* 287 F. Supp. 3d 213, 228-29 (E.D.N.Y. 2018) (discussing commodity fraud under the Act in connection with a virtual currency).

a.     **Defaulting Defendants Engaged in a Fraudulent Scheme in Connection with a Contract of Sale of a Commodity in Interstate Commerce**

46.     The same conduct that violated 7 U.S.C. § 6b also violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 (2023), and the same evidence cited by the CFTC in its scienter analysis regarding 7 U.S.C. § 6b applies here as well. Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 (2023) by defrauding customers in connection with the sale of contracts for the trading of forex, including deceiving customers by failing to disclose material facts and misappropriating funds that customers deposited for purposes of trading. This type of conduct falls squarely within the Act and

Regulations and has been recognized as a violation subject to an enforcement action. *See CFTC v. McDonnell*, 332 F. Supp. 3d 641, 723 (E.D.N.Y. 2018) (holding 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 (2023) were violated by misappropriating funds and making fraudulent misrepresentations in connection with virtual currency transactions); *CFTC v. Leben*, No. 3:14-cv-866, 2016 WL 7354359, at *5 (D.S.C. Aug. 5, 2016) (finding that defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by misappropriating funds); *CFTC v. Glob. Precious Metals Trading Co.*, No. 1:13-cv-21708, 2013 WL 5212237, at *5 (S.D. Fla. Sept. 12, 2013) (same).

47. The "in connection" with requirement of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 (2023) is satisfied where the contract of sale of a commodity in interstate commerce and the fraud are not independent events. *Cf. SEC v. Zandford*, 535 U.S. 813, 818-26 (2002) (finding, in the securities context, the "in connection with" requirement was satisfied where a broker sold customer securities for the purpose of transferring the proceeds to his own account); *SEC v. DiBella*, No. 3:04-CV-1342, 2005 WL 3215899, at *6 (D. Conn. Nov. 29, 2005) ("A fraudulent scheme that coincides with the sale of securities satisfies the 'in connection with' requirement of section 10(b) [of the Exchange Act] and Rule 10b-5." (citing *Zandford*, 535 U.S. at 825)). The "in connection with" requirement is construed broadly. *See, e.g.*, *SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992); *see also* Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,405 (July 14, 2011) ("The Commission interprets the words 'in connection with' broadly, not technically or restrictively.").

48. In this case, the fraudulent conduct occurred, and the material omissions were made, in connection with agreements, transactions and/or contracts of sale of a commodity in interstate commerce. Defendants accepted over $57.5 million from ROFX customers located in

the U.S. and overseas for the purpose of leveraging, margining and/or entering into contracts for the trading of forex as evidenced by the wire notations and invoice numbering of the funds they accepted directly from customers who made the contract via the ROFX website, and their return of funds to some customers who requested the return of funds via the ROFX website and/or the ROFX email address. [ECF No. 55 ¶¶ 29-32, 38, 41, 44].

**b.    Defaulting Defendants Acted with Scienter**

49.    As discussed above, the level of scienter required to plead a cause of action under 17 C.F.R. § 180.1 (2023) is reckless or intentional. *Kraft Foods Grp., Inc*., 153 F. Supp. 3d at 1007 (citing 76 Fed. Reg. at 41,404). The same evidence with respect to scienter regarding 7 U.S.C. § 6b(a)(2)(A) and (C) applies here. Defaulting Defendants acted willfully or, at the very least, with reckless disregard for the obvious danger that customers would be misled and defrauded. Defaulting Defendants did business as ROFX, utilizing the ROFX website as their means of fraudulent solicitation, and failed to disclose material facts to customers from whom they accepted over $57 million. [ECF No. 55 ¶¶ 5, 30, 44]. Further, Defaulting Defendants misappropriated ROFX customers' funds and knew or should have known that these funds were not being used for any type of trading. *Id.* ¶¶ 32, 38. Accordingly, Defaulting Defendants acted with the requisite scienter.

**3.    Defaulting Defendants Failed to Register as FCMs in Violation of 7 U.S.C. § 6d(a)(1) (Count 3)**

50.    Corporate Defendants acted as FCMs without the benefit of registration in violation of 7 U.S.C. § 6d(a)(1), which makes it unlawful for any person to act as an FCM unless such person is registered with the CFTC. For purposes of forex trading, 7 U.S.C. § 1a(28), in part, defines an FCM as an individual, association, partnership, corporation, or trust that is engaged in soliciting or accepting orders for any agreement, contract, or transaction described in 7

U.S.C. § 2(c)(2)(C)(i) (*i.e.*, forex transactions), and, in connection with soliciting or accepting such orders, accepts any money, securities, or property to margin, guarantee, or secure any trades that result or may result therefrom.

51.     Corporate Defendants did business as ROFX and used the ROFX website to fraudulently obtain customer funds. [ECF No. 55 ¶ 5]. Accordingly, they have engaged in soliciting or accepting orders for forex transactions and have accepted money from ROFX customers, via checks and wire transfers, to margin, guarantee, or secure trades that result or may result from the forex transactions. *Id*. ¶ 40. During the Relevant Period, they accepted over $57.5 million from over 1,100 customers for forex trading. *Id.* ¶¶ 1, 6. None of the Corporate Defendants have ever been registered as an FCM with the CFTC, and each is therefore acting as an unregistered FCM in violation of 7 U.S.C. § 6d(a)(1). *Id.* ¶¶ 14-18.

### 4.     Corporate Defendants Are Liable for Facilitating Defendants' Violations

52.     The well-pleaded allegations of the Amended Complaint establish that Corporate Defendants are liable for the violations of their employees or agents, including Davis, Konovalenko, Shymko, Skala, and Stubbs. Under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2023), a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office.  *See Clayton Brokerage Co. of St. Louis Inc. v. CFTC*, 794 F.2d 573, 581 (11th Cir. 1986); *CFTC v. Gutterman*, No. 1:12-cv-21047, 2012 WL 2413082, at *7 (S.D. Fla. June 26, 2012). Because the fraudulent conduct of the five Facilitating Defendants as described in the Amended Complaint occurred within the scope of their employment with the five Corporate Defendants, the five Corporate Defendants are liable as principals for each

act, omission, and failure of Davis, Konovalenko, Shymko, Skala, and Stubbs constituting violations of 7 U.S.C. §§ 6b, 6d(a)(1), 9(1) and 17 C.F.R. §§ 5.2(b) and 180.1(a) (2023).

### 5. Facilitating Defendants Are Liable for Corporate Defendants' Violations

53.     The well-pleaded allegations of the Amended Complaint establish that Davis, Konovalenko, Shymko, Skala, and Stubbs are liable for Corporate Defendants' violations as controlling persons. 7 U.S.C. § 13c(b) provides that any person who, directly or indirectly, controls any person who has violated the Act, or the Regulations promulgated thereunder, may be held liable for such violations to the same extent as the controlled person. The fundamental purpose of this controlling person liability provision of the Act is "to reach behind the corporate entity to the controlling individuals of the corporation and to impose liability for violations of the Act directly on such individuals as well as on the corporation itself." *Hunter Wise*, 21 F. Supp. 3d at 1350 (quotation omitted).

54.     To establish controlling-person liability pursuant to 7 U.S.C. § 13c(b), the CFTC must show that the person possesses the requisite degree of control and either (1) knowingly induced, directly or indirectly, the acts constituting the violation; or (2) failed to act in good faith. *Id.*; *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 160-61 (3d Cir. 2009) (finding individual defendants liable as controlling persons for corporation's failure to register as commodity pool operator).

55.     To establish the first element, a defendant must possess "general control" over the operation of the entity principally liable. *Hunter Wise*, 21 F. Supp. 3d at 1350. Evidence that a defendant is an owner, officer, principal, or the authorized signatory on the company's bank accounts indicates general control. *Id*. Davis, Konovalenko, Shymko, Skala, and Stubbs, at all relevant times, were the owners and principals of Corporate Defendants Easy Com. [ECF No. 55

¶¶ 47-61, 74-99]. As such, they had general control over Easy Com, GEA, Grovee, Notus, and Shopostar.

56.     To establish the second element, the CFTC must show that a defendant controlling-person knowingly lacked good faith or knowingly induced the conduct constituting the violation at issue. *R.J. Fitzgerald*, 310 F.3d at 1334; *Hunter Wise*, 21 F. Supp. 3d at 1350. The CFTC therefore may meet the required second element by establishing that the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue. *Id*. Controlling persons cannot avoid liability by deliberately or recklessly avoiding knowledge about potential wrongdoing. *Hunter Wise*, 21 F. Supp. 3d at 1350. To support a finding of constructive knowledge, the CFTC must show that a defendant "lacked actual knowledge only because he consciously avoided it." *Hunter Wise*, 21 F. Supp. 3d at 1350-51 (quoting *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1569 (11th Cir. 1995)).

57.     Here, each of the Facilitating Defendants is liable as controlling persons because they were all corporate officers and principals of Corporate Defendants and/or signatories to Corporate Defendants' bank accounts. [ECF Nos. 55 ¶¶ 19-23, 47-99; 157-1 ¶ 8]. Facilitating Defendants controlled and used Corporate Defendants' bank accounts to collect, transfer, and disburse customer funds. *Id*. Given the tens of millions of dollars accepted into Corporate Defendants' bank accounts and misappropriated by Facilitating Defendants, they knowingly induced the violations because they had actual or constructive knowledge of the wrongdoing. *See In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *7 (Jan. 12, 1988) ("[W]e reject the view that a controlling person must know that the acts at issue amount to a violation in order to be held to have 'knowingly' induced the acts constituting the violation. . . . [I]f the controlling person knowingly induces acts that amount to a violation, he will not escape liability merely because he

acted in good faith."). Because each of the Facilitating Defendants controlled one or more Corporate Defendants and knowingly induced the acts constituting its violations of the Act and Regulations, pursuant to 7 U.S.C. § 13c(b), Facilitating Defendants are liable for Corporate Defendants' violations of 7 U.S.C. §§ 6b, 9(1) and 17 C.F.R. §§ 5.2(b) and 180.1(a) (2023).

## V.   RELIEF

**IT IS HEREBY ORDERED THAT:**

### A.   Permanent Injunction

58.     The well-pleaded allegations of the Amended Complaint warrant a permanent injunction against Defaulting Defendants that prohibits them from registering with the CFTC and participating in the markets regulated by the CFTC. The CFTC may seek permanent injunctive relief "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder." 7 U.S.C. § 13a-1(a). 7 U.S.C. §13a-1(b) provides, in pertinent part, that "[u]pon a proper showing, a permanent injunction . . . shall be granted without bond." In actions for a statutory injunction, such as this, the CFTC "need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits, but only that there is a reasonable likelihood that the wrong will be repeated." *CFTC v. British Am. Comm. Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977); *see also CFTC v. Southern Trust Metals*, 894 F.3d 1313, 1328 (11th Cir. 2018) ("[T]he ultimate test [for an injunction] is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.") (omitting internal citations). This test sets forth six non-dispositive factors to consider, including "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against

future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *Id*. (quoting *SEC v. Carriba Air, Inc*., 681 F.2d 1318, 1322 (11th Cir. 1982)).

59.    Defaulting Defendants' scheme to defraud at least 1,100 customers in connection with forex transactions—including their fraud by material omissions and misappropriation of all of the $57.5 million in customer funds they received—warrants entry of a permanent injunction, including permanent registration and trading bans. As part of this scam, the five Corporate Defendants acted as unregistered FCMs. [ECF No. 55 ¶¶ 100-101]. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defaulting Defendants will continue to engage in the acts and practices alleged in the Amended Complaint.

60.    Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1, Defaulting Defendants are permanently restrained, enjoined, and prohibited from directly or indirectly:

a.    Cheating or defrauding or attempting to cheat or defraud any other person, or willfully deceiving or attempting to deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any person, or otherwise violating 7 U.S.C. § 6b(a)(2)(A), (C) or 17 C.F.R. § 5.2(b)(1), (3) (2023).

b.    (1) Using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; (2) making or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engaging or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) (2023).

c.    Failing to register as an FCM, (as that term is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28)), in violation of 7 U.S.C. § 6d(a)(1).

61.     Defaulting Defendants are also permanently restrained, enjoined, and prohibited from directly or indirectly:

     a. Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40));

     b. Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2023)), for their own personal accounts or for any account in which they have a direct or indirect interest;

     c. Having any commodity interests traded on their behalf;

     d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

     e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

     f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2023); and

     g. Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2023)), agent, or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9) (2023).

## B.     Restitution

62.     Defaulting Defendants shall pay, jointly and severally, restitution in the amount of fifty-six million, three hundred sixty-two thousand, two hundred seventy-nine dollars, and twenty-one cents ($56,362,279.21) ("Restitution Obligation"), representing the net losses suffered by customers as a result of Defaulting Defendants' fraudulent conduct.[7] If the Restitution Obligation is not paid immediately in full, post-judgment interest shall accrue on the Restitution Obligation

---

[7] This amount was calculated by taking the total amount of ROFX customer funds accepted by all Defendants ($57,515,344.31), less the amount of funds Defendants returned to certain customers ($1 million), less the amount of customer funds that Defendant Stubbs accepted into Corporate Defendant Grovee's Bank of America account ending in *9293 ($153,065.10). *See* [ECF Nos. 157-1 ¶¶ 2, 8, 15; 157-1].

beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

63.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). Defaulting Defendants shall make payments of the Restitution Obligation to the Monitor, and the Monitor shall collect such payments and make distributions to customers. Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from the appointment, other than actions involving fraud.

64.    Defaulting Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "**NOTUS LLC d/b/a ROFX Fund**" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under a cover letter that identifies the paying Defaulting Defendants and the name and docket number of this proceeding. Defaulting Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

65.    The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defaulting Defendants' customers or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to

eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC following the instructions for restitution and civil monetary penalty payments set forth below.

66.     Defaulting Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defaulting Defendants' customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defaulting Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

67.     The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

68.     The amounts payable to each customer shall not limit the ability of that customer from proving that a greater amount is owed from Defaulting Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

69.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defaulting Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defaulting Defendants, to ensure continued

compliance with any provision of this Order, and to hold Defaulting Defendants in contempt for any violations of any provision of this Order.

70.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defaulting Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**C.     Civil Monetary Penalty**

71.     Defaulting Defendants shall pay jointly and severally, a civil monetary penalty in the amount of one hundred sixty-nine million, eighty-six thousand, eight hundred thirty-seven dollars, and sixty-three cents ($169,086,837.63) ("CMP Obligation"). If the CMP Obligation is not paid immediately, then post judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

72.     Defaulting Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amc-ar-cftc@faa.gov

73.     If payment by electronic funds transfer is chosen, Defaulting Defendants shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defaulting Defendants shall

accompany payment of the CMP Obligation with a cover letter that identifies the paying Defaulting Defendants and the name and docket number of this proceeding. Defaulting Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581. Defaulting Defendants shall also transmit a copy of the cover letter and the form of payment to Paul G. Hayeck, Deputy Director, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

**D.     Miscellaneous Provisions**

74.     Partial Satisfaction:  Acceptance by the CFTC of any partial payment of Defaulting Defendants' Restitution or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

75.     Notice:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> **Notice to Commission:**
> Paul G. Hayeck
> Deputy Director, Division of Enforcement
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street, N.W.
> Washington, DC 20581
>
> **Notice to Monitor:**
> Office of Administration
> National Futures Association
> 300 South Riverside Plaza, Suite 1800
> Chicago, Illinois 60606-3447

All such notices to the CFTC shall reference the name and docket number of this action.

76.    Change of Address/Phone: Until such time as Defaulting Defendants satisfy in full the Restitution and/or CMP Obligations as set forth in this Order, they shall provide written notice to the CFTC by certified mail of any change to their telephone numbers and mailing addresses within ten calendar days of the change.

77.    Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

78.    Waiver: The failure of any party to the Order or any customer at any time to require performance of any provision of the Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of the Order. No waiver in one or more instances of the breach of any provision contained in the Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of the Order.

76.    Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defaulting Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defaulting Defendants.

77.    Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defaulting Defendants to modify or for relief from the terms of this Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other

Statutory and Equitable Relief Against Defaulting Defendants (1) Jase Davis, (2) Borys Konovalenko, (3) Anna Shymko, (4) Alla Skala, (5) Easy Com LLC, (6) Global E-Advantages LLC, (7) Grovee LLC, (8) Notus LLC, and (9) Shopostar LLC.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of April, 2024

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE